# EXHIBIT A-2

# Deed of Trust

#822
6700039-L
26.1341392

**Electronically Recorded**
Official Public Records

Tarrant County Texas
2008 Jul 08 02:42 PM
Fee: $ 100.00
Submitter: ACS INC

D208263218

22 Pages

*Suzanne Henderson*

Suzanne Henderson

THIS DOCUMENT WAS
ELECTRONICALLY
RECORDED ON DATE
_7/8/08_

After recording, please return to:
2615 W. Pioneer Parkway, Suite 101
Grand Prairie, Texas 75051

**NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OF THE FOLLOWING INFORMATION FROM THIS INSTRUMENT BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

**DEED OF TRUST, SECURITY AGREEMENT, ASSIGNMENT OF LEASES AND RENTALS AND FINANCING STATEMENT**

This Deed of Trust, Security Agreement, Assignment of Leases and Rentals and Financing Statement ("Deed of Trust") is made effective as of the 2nd day of July, 2008, by Meecham Hospitality, LLC, a Texas limited liability company, ("Grantor"), whose address for notice hereunder is 2000 Bridget Marie Drive, Modesto, California 95351, in favor of Kevin Bass, Trustee, and his successors in the Trust hereby created ("Trustee") for the benefit of the hereinafter defined "Beneficiary";

**ARTICLE I**
**DEFINITIONS**

1.1    As used herein, the following terms shall have the following meanings:

(a)    **Accounts:**  Each and every right of Grantor to the payment of money, whether such right to payment now exists or hereafter arises; all including but not limited to all present and future debt instruments, contract rights, accounts receivable, chattel papers, and loans and obligations receivable.

(b)    **Beneficiary:**  City Bank whose address for notice hereunder is 2615 W. Pioneer Parkway, Suite 101, Grand Prairie, Texas 75051, and the subsequent holder or holders, from time to time, of the Note.

(c)    **Event of Default:**  Any happening or occurrence described in Article VI herein.

(d)    **Fixtures:**  All materials, supplies, equipment, apparatus and other items now or hereafter attached to, installed on or in the Land or the Improvements, or which in some fashion are deemed to be fixtures to the Land or Improvements under the laws of the State of Texas.  The term "Fixtures" shall include, without limitation, all items of personalty to the extent that the same may be deemed Fixtures under applicable law.

(e)    **Governmental Authority:**  Any and all courts, boards, agencies, commissions, offices or authorities of any nature whatsoever for any governmental unit (federal, state, county, district, municipal, city or otherwise) whether now or hereafter in existence.

(f)    **Grantor:**  The above defined Grantor and any and all subsequent record or equitable owners of the Mortgaged Property.

(g)    **Guarantor (whether one or more):**  Bawa S. Dhillon, Harminder S. Dhillon, Harwant S. Dhillon, and Jagmohan S. Dhillon.

(h)    **Guaranty (individually and/or collectively, as the case may be):**  That or those instruments of Guaranty from Guarantor to Beneficiary guaranteeing the repayment of the Indebtedness and the performance and satisfaction of the Obligations.

(i)    **Impositions:**  All real estate and personal property taxes, water, gas, sewer, electricity and other utility rates and charges; charges imposed pursuant to any subdivision, planned unit development or condominium declaration or restrictions; charges for any easement, license or agreement maintained for the benefit of the Mortgaged Property, and all other taxes, charges and assessments and any interest, costs or penalties with respect thereto of any kind and nature whatsoever which at any time prior to or after the execution hereof may be assessed, levied or imposed upon the Mortgaged Property or the ownership, use, occupancy or enjoyment thereof.

(j)    **Improvements:**  Any and all buildings, structures, open parking areas and other improvements, and any and all accessions, additions, replacements, substitutions or alterations thereof or appurtenances thereto, now or at any time hereafter situated, placed or constructed upon the Land or any part thereof.

1

(k)    **Indebtedness:** The principal of, interest on and all other amounts and payments due under or secured by the Note and the other Security Documents and all renewals, extensions and modifications thereof, together with all funds hereafter advanced by Beneficiary to or for the benefit of Grantor, Maker or any Guarantor as contemplated by any covenant or provision herein contained or for any other purpose, and all other indebtedness, of whatever kind or character, direct or indirect, absolute or contingent, owing or which may hereafter become owing by Grantor, Maker, or any Guarantor to Beneficiary whether such indebtedness is evidenced by notes, open account, overdraft, endorsement, surety agreement, guaranty or otherwise, it being contemplated that Grantor, Maker, and/or Guarantor may hereafter become indebted to Beneficiary in further sum or sums.

(l)    **Land:** The real estate or any interest therein described in Exhibit "A" attached hereto together with all improvements and Fixtures and all rights, titles and interests appurtenant thereto.

(m)    **Leases:** Any and all leases, subleases, licenses, concessions or other agreements (written or oral, now or hereafter in effect) which now or hereafter grant a possessory interest in and to, or the right to reside in, operate in, sell or use the Mortgaged Property, and all other agreements, including, but not limited to, utility contracts, maintenance agreements and service contracts, which in any way relate to the use, occupancy, operation, maintenance, enjoyment or ownership of the Mortgaged Property.

(n)    **Legal Requirements:** (i) Any and all present and future judicial decisions, statutes, rulings, rules, regulations, permits, certificates or ordinances of any Governmental Authority in any way applicable to Grantor, any Guarantor (with respect to the indebtedness on the Mortgaged Property) or the Mortgaged Property, including, but not limited to, those respecting the ownership, use, construction, occupancy, possession, operation, maintenance, alteration, repair or reconstruction thereof, (ii) any and all covenants, conditions, and restrictions contained in any deed or other form of conveyance or in any other instrument of any nature that relate in any way or are applicable to the Mortgaged Property or the ownership, use or occupancy thereof, (iii) Grantor's or any Guarantor's presently or subsequently effective Bylaws and Articles of Incorporation, or any instruments establishing any partnership, limited partnership, joint venture, trust or other form of business association (if either, both or all by any of same), (iv) any and all Leases or other contracts (written or oral) of any nature to which Grantor or any Guarantor may be bound, which affects the Mortgaged Property and (v) any and all restrictions, reservations, conditions, easements or other covenants or agreements of record affecting the Mortgaged Property.

(o)    **Loan Agreement:** That certain Loan Agreement of even date herewith, executed by Maker setting forth terms and conditions that effect the indebtedness, the Obligations, and/or this Deed of Trust.

(p)    **Maker:** Meecham Hospitality, LLC.

(q)    **Mortgaged Property:** The Land, Accounts, Personalty, Fixtures, Leases and Rents, together with:

(i)    all rights, privileges, tenements, hereditaments, rights-of-way, easements, appendages and appurtenances in anywise appertaining thereto, and all right, title and interest of Grantor in and to any street, ways, alleys, strips or gores of land adjoining the Land or any part thereof, which Grantor now owns or at any time hereafter acquires;

(ii)    all betterments, accessions, additions, appurtenances, substitutions, replacements and revisions thereof and thereto and all reversions and remainders therein;

(iii)    all of Grantor's right, title and interest in and to any award, remuneration, settlement or compensation heretofore made or hereafter to be made by any Governmental Authority to Grantor relating to the Land, Improvements, Fixtures, Personalty, Leases or Rents, including those for any vacation of, or change of grade in, any streets affecting the Land or the Improvements;

(iv)    all plans and specifications for the Improvements, all contracts and subcontracts relating to the Land (including, without limitations, development and cost sharing or reimbursement agreements), Improvements, Fixtures, Personalty, Leases and Rents, all deposits (including tenant's security deposits), funds, accounts, contract rights (including, without limitation, rights to reimbursements), instruments, documents, general intangibles (including trademarks, service marks, trade names and symbols used in connection therewith), and notes or chattel paper arising from or by virtue of any transactions related to the property described herein; all declarations of covenants and other similar documents relating to any part of the Land, and all rights (including, without limitation, membership and ownership rights) in any homeowners or other owners association relating to any part of the Land; all right, title and interest of Grantor under each contract for sale, exchange or other transfer of all or any part of the Mortgaged Property or any interest therein (herein referred to collectively as the "Sales Contracts"), consent thereto not granted or to be implied hereby, and all deposits thereunder; all permits, licenses, franchises, certificates, and other rights and privileges obtained in connection with the property described herein; all proceeds arising from or by virtue of the sale,

lease or other disposition of all or any part of the Mortgaged Property (consent to same not granted or to be implied hereby); all proceeds (including premium refunds) payable or to be payable under each policy of insurance relating to the Mortgaged Property;

(v)    all right, title and interest of Grantor, now or hereafter existing, in regard to (x) any municipal utility district or other similar entity, which relates to or has jurisdiction over any portion of the Land;

(vi)    all other interest of every kind and character which Grantor now has or at any time hereafter acquires in and to the above described real and personal property and all property which is used or useful in connection therewith, including rights of ingress and egress, easements, licenses, and all reversionary rights or interest of Grantor with respect to such property.  To the extent permitted by law all of the foregoing Personalty and Fixtures are to be deemed and held to be a part of and affixed to the real property.  In the event the estate of Grantor in and to any of the Land and Improvements is a leasehold estate, this conveyance shall include and the lien, security interest and assignment created hereby shall encumber and extend to all other, further or additional titles, estates, interest or rights which may exist now or at any time be acquired by Grantor in or to the property demised under the lease creating such leasehold estate and including Grantor's rights, if any, to purchase the property demised under such lease and, if fee simple title to any of such property shall ever become vested in Grantor, such fee simple interest shall be encumbered by this Deed of Trust in the same manner as if Grantor had fee simple title to such property as of the date of execution hereof; and

(vii)    any and all other security and collateral of any nature whatsoever, now or hereafter given for the repayment of the Indebtedness or the performance and discharge of the Obligations.

As used in this Deed of Trust, the term "Mortgaged Property" is expressly defined as meaning all or, where the context permits or requires, any portion of the above and all or, where the context permits or requires, any interest therein.

(r)    **Note**:  That certain promissory note of even date herewith, executed by Maker, payable to the order of Beneficiary and in the original principal amount of $12,000,000.00.

(s)    **Obligations**:  Any and all of the covenants, warranties, representations and other obligations made or undertaken by Maker, Grantor, Guarantor or others to Beneficiary, Trustee or others as set forth in the Security Documents, or any lease, sublease or other agreement pursuant to which Grantor is granted a possessory interest in the Land.

(t)    **Permitted Encumbrances**:  None, other than as set forth in the Mortgagee's Policy of Title Insurance issued in connection with the Note and this Deed of Trust.

(u)    **Personalty**:  All of the right, title and interest of Grantor in and to all the following property to the extent such property is or may be used in or related to the planning, development, financing or operation of the Mortgaged Property:

(i)    equipment and machinery,

(ii)    general intangibles, money, insurance proceeds, condemnation awards, accounts, trademarks and trade names,

(iii)    all refundable, returnable, or reimbursable fees, deposits or other funds or evidences of credit or indebtedness deposited by or on behalf of Grantor with any governmental agencies, boards, corporations, providers of utility services, public or private, including specifically, but without limitation, all refundable, returnable or reimbursable tap fees, utility deposits, commitment fees and development costs,

(iv)    any plans and specifications, permits, licenses, franchises, certificates and other rights and privileges obtained in connection with the Mortgaged Property, together with all rights, titles and interests of Grantor in, under or pursuant to any contracts or other agreements, such as engineers contracts, utility contracts, maintenance agreements and service contracts, which in any way relate to the use, occupancy, operation, maintenance, enjoyment or ownership of the Mortgaged Property, and

(v)    all other personal property (other than the Fixtures) as defined in and subject to the provisions of the Texas Business and Commerce Code (Article 9 - Secured Transactions) (the "Code"), together with all accessions, replacements and substitutions thereto or therefore and the proceeds thereof.

(v)    **Rents:** All of the rents, revenues, income, proceeds, royalties, profits and other benefits paid or payable for using, leasing, licensing, possessing, operating from or in, residing in, selling, or otherwise enjoying or using the Mortgaged Property.

(x)    **Security Documents:** The Loan Agreement, the Note, this Deed of Trust, the Guaranty and any and all other documents now or hereafter executed by Grantor, Maker, Guarantor or any person or party to evidence or secure the payment of the Indebtedness or the performance and discharge of the Obligations.

### ARTICLE II
### GRANT

To secure the full and timely payment of the Indebtedness and the full and timely performance and discharge of the Obligations, Grantor has GRANTED, BARGAINED, SOLD and CONVEYED, and by these presents does GRANT, BARGAIN, SELL and CONVEY unto Trustee the Mortgaged Property, subject, however, to the Permitted Encumbrances, if any, TO HAVE AND TO HOLD the Mortgaged Property unto Trustee, his successors in trust and the Trustee's assigns forever, and Grantor does hereby bind itself, its successors and assigns to warrant and forever defend the title to the Mortgaged Property unto Trustee against every person whomsoever lawfully claiming or to claim the same or any part thereof; provided, however, that if Maker or Grantor shall pay (or cause to be paid) the Indebtedness as and when the same shall become due and payable and shall perform and discharge (or cause to be performed and discharged) the Obligations on or before the date same are to be performed and discharged, then the liens, security interests, estates and rights granted by the Security Documents shall terminate, otherwise same shall remain in full force and effect. Grantor acknowledges that (a) Grantor is receiving direct or indirect benefit from the loan to Maker evidenced by the Security Documents, and (b) Grantor is executing this Deed of Trust in order to induce Beneficiary to make the loan evidenced by the Security Documents.

The debt evidenced by the Note is in payment of the purchase price of the Mortgaged Property; the debt is secured both by this Deed of Trust and by a vendor's lien on the Mortgaged Property, which is expressly retained in a deed to Grantor of even date. This Deed of Trust does not waive the vendor's lien, and the two liens and the rights created by this Deed of Trust are cumulative. Lender may elect to foreclose under either of the liens without waiving the other or may foreclose under both.

### ARTICLE III
### WARRANTIES AND REPRESENTATIONS

In addition to the representations and warranties in the Loan Agreement, Grantor hereby unconditionally warrants and represents to Beneficiary as follows:

3.1.    **Validity of Documents.** The execution, delivery and performance by Grantor of the Security Documents (other than the Guaranty), and the borrowing evidenced by the Note are (a) within Grantor's powers, (b) have received all (if any) requisite prior governmental approval in order to be legally binding and enforceable in accordance with the terms thereof, and (c) will not violate, be in conflict with, result in a breach of or constitute (with due notice or lapse of time, or both) a default under, any Legal Requirement or result in the creation or imposition of any lien, charge or encumbrance of any nature whatsoever upon any of Grantor's or Guarantor's property or assets, except as contemplated by the provisions of the Security Documents. The Security Documents constitute the legal, valid and binding obligations of Grantor, Guarantor, Maker and others obligated under the terms of the Security Documents, in accordance with their respective terms, and Grantor has full and lawful authority to bargain, grant, sell, mortgage, assign, transfer and convey all of the Mortgaged Property as set forth herein, and Grantor is duly authorized to enter into this Deed of Trust and the execution and delivery thereof does not breach, and the terms thereof are not in conflict with, Grantor's articles of organization.

3.2.    **Information.** All information, reports, papers and data given to Beneficiary with respect to Grantor, Maker, Guarantor or others obligated under the terms of the Security Documents or the Mortgaged Property are accurate, complete and correct in all material respects and do not omit any fact the inclusion of which is necessary to prevent the facts contained therein from being materially misleading.

3.3.    **Title to Mortgaged Property and Lien of this Instrument.** Grantor has good and indefeasible title to the Land and the Improvements, and good and indefeasible title to the Fixtures and Personalty, Leases and Rents, free and clear of any liens, charges, encumbrances, security interest and adverse claims whatsoever except the Permitted Encumbrances, if any. This Deed of Trust constitutes a valid, subsisting first priority deed of trust lien on the Land, the Improvements and the Fixtures and a valid, subsisting first priority lien in and to the Personalty, Leases and Rents, all in accordance with the terms hereof, subject only to the Permitted Encumbrances.

4

3.4.    **Taxes and Other Payments.** Grantor, Maker and Guarantor have filed all federal, state, county, municipal and city income and other tax returns required to have been filed by them and have paid all taxes which have become due pursuant to such returns or pursuant to any assessments received by them, and neither Grantor, Maker nor Guarantor knows of any basis for any additional assessment in respect of any such taxes. Grantor has paid or will pay in full all sums owing or claimed for labor, material, supplies, personal property (whether or not constituting a Fixture hereunder) and services of every kind and character used, furnished or installed in the Mortgaged Property and no claim for same currently exists or will be permitted to become past due.

3.5.    **Litigation.** Except as disclosed in writing to Beneficiary prior to the date hereof, there are no actions, suits or proceedings pending or, to the knowledge of Grantor, threatened against or affecting the Mortgaged Property or involving the validity or enforceability of this Deed of Trust or the priority of the lien and security interest hereof, and there are no actions, suits or proceedings pending or, to the knowledge of the Grantor, threatened against or affecting Grantor, Maker or any Guarantor which could have a material adverse affect on the ability of each or any of such parties to perform their respective obligations under the Security Documents.

3.6.    **Not a Foreign Person.** Grantor is not a "foreign person" within the meaning of the Internal Revenue Code of 1986, as amended (hereinafter called the "Code"), Sections 1445 and 7701 (i.e., Grantor is not a non-resident alien, foreign corporation, foreign partnership, foreign trust or foreign estate, as those terms are defined in the Code and regulations promulgated thereunder).

3.7    **Anti-Terrorism.** Grantor is not, and shall not during the term of the Loan become, a person or entity with whom Beneficiary is restricted from doing business under the Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act of 2001, H.R. 3162, Public Law 107-56 (commonly known as the "USA Patriot Act") and Executive Order Number 13224 on Terrorism Financing, effective September 24, 2001 and regulations promulgated pursuant thereto (collectively, "Anti-Terrorism Laws"), including without limitation persons and entities named on the Office of Foreign Asset Control Specially Designated Nationals and Blocked Persons List (collectively, "Prohibited Persons"). To the best of its knowledge, Grantor is not currently engaged in any transactions or dealings, or otherwise associated with, any Prohibited Persons in connection with the use or occupancy of the Premises. Grantor will not in the future during the term hereof engage in any transactions or dealings, or be otherwise associated with, any Prohibited Persons in connection with the use or occupancy of the Premises. Breach of these representations constitutes a material breach of this Loan and shall entitle Beneficiary to any and all remedies available hereunder, or at law or in equity.

## ARTICLE IV
## AFFIRMATIVE COVENANTS

In addition to the covenants contained in the Loan Agreement, Grantor hereby unconditionally covenants and agrees with Beneficiary as follows:

4.1.    **Payment and Performance.** Grantor will pay or cause Maker to pay the Indebtedness, as and when called for in the Security Documents, and will perform all of the Obligations, in full and on or before the dates they are to be performed.

4.2.    **Existence.** Grantor will preserve and keep in full force and effect its existence, rights, franchises and trade names.

4.3.    **Compliance with Legal Requirements.** Grantor will promptly and faithfully comply with, conform to and obey all present and future Legal Requirements, whether or not same shall necessitate structural changes in, improvements to, or interfere with the use or enjoyment of, the Mortgaged Property.

4.4.    **Payment of Impositions.** Grantor will duly pay and discharge, or cause to be paid and discharged, the Impositions not later than the due date thereof, or the day any fine, penalty, interest or cost may be added thereto or imposed, or the day any lien may be filed, for the nonpayment thereof (if such day is used to determine the due date of the respective item); provided, however, that Grantor may, if permitted by law and if installment payments would not create or permit the filing of a lien against the Mortgaged Property, pay the Impositions in installments whether or not interest shall accrue on the unpaid balance of such Impositions. Grantor may in good faith, in lieu of paying such Impositions as they become due and payable, by appropriate proceedings, contest the validity thereof.

4.5.    **Condition of Property.** Grantor will keep the Mortgaged Property in first class order and condition and presenting a first class appearance and will make all repairs, replacements, renewals, additions, betterments, improvements and alterations thereof and thereto, interior and exterior, structural and nonstructural, ordinary and extraordinary, foreseen and unforeseen, which are necessary or reasonably appropriate to keep same in such order and condition. Grantor will also use its best efforts to prevent any act or occurrence which might impair the value or usefulness of the Mortgaged Property for its

5

intended usage as set forth in any plans and specifications for the Improvements submitted to Beneficiary or in the Security Documents.

**4.6.    Insurance.** Grantor shall obtain and maintain Insurance (including business interruption insurance) upon and relating to the Mortgaged Property insuring against loss by fire and such other hazards, casualties and contingencies (including, but not limited to, fire, lightning, hail, windstorm, explosion, malicious mischief, vandalism and business interruption insurance covering loss of Rents) as are covered by extended coverage policies in effect where the Land is located and such other risks as may be specified by Beneficiary from time to time, with such insurers of recognized responsibility as are acceptable to Beneficiary, and in an amount equal to the greater of (a) ninety percent (90%) of the full insurable replacement value of the Mortgaged Property or (b) the amount of the indebtedness. Additionally, Grantor shall obtain and maintain general public liability and property damage insurance with such insurers of recognized responsibility as are acceptable to Beneficiary and in amounts of not less than $1,000,000 per occurrence for bodily injury and $1,000,000 per occurrence for property damage. Grantor shall also carry adequate business interruption insurance. Grantor shall review its insurance coverage annually with Beneficiary's insurance specialist and Grantor shall increase the amount of said coverage as may be necessary to satisfy the requirements of Beneficiary or its assigns. Each insurance policy issued in connection with the Mortgaged Property shall provide, by way of endorsement, riders or otherwise, that proceeds will be payable to Beneficiary as its interest may appear. All such insurance shall be issued by carriers acceptable to the Beneficiary and shall have an A. M. Bests financial rating of at least A:XII ($25,000,000 - $50,000,000). All renewal and substitute policies of insurance shall be delivered at the office of Beneficiary, premiums paid, at least 10 days before termination of policies theretofore delivered to Beneficiary. In case of loss, and except as provided in Section 4.7 hereof, Beneficiary, at its option, shall be entitled to receive and retain the proceeds of the insurance policies, applying the same upon the indebtedness secured hereby. If any loss shall occur at any time when Grantor shall be in default in the performance of this covenant, Beneficiary shall be entitled to the benefit of all insurance policies held by or for any Grantor, to the same extent as if same had been made payable to Beneficiary; and upon foreclosure hereunder, Beneficiary shall become the owner thereof. Beneficiary shall have the right, but not the obligation, to make premium payments, at Grantor's expense, to prevent any cancellation, endorsement, alteration or reissuance, and such payments shall be accepted by the insurer to prevent same.

**4.7.    Restoration Following Casualty.** If any act or occurrence of any kind or nature (including any casualty for which insurance was not obtained or obtainable) shall result in damage to or loss or destruction of the Mortgaged Property, Grantor will give notice thereof to Beneficiary and if all of the insurance proceeds (if any) shall be sufficient for the purpose, commence and continue diligently to completion to restore, repair, replace and rebuild the Mortgaged Property as nearly as possible to its value, condition and character immediately prior to such damage, loss or destruction. Anything herein to the contrary notwithstanding, if Beneficiary determines, in its sole discretion, that the proceeds of the insurance policies are sufficient to restore, repair, replace and rebuild the Mortgaged Property as nearly as possible to its value, condition and character immediately prior to such damage, loss or destruction, or if Grantor provides additional sums to Beneficiary's satisfaction so that the aggregate of such sums and the insurance proceeds will be sufficient for such purpose, and provided no Event of Default exists hereunder, the proceeds of the insurance policies, if greater than $25,000, together with additional sums provided by Grantor, shall be placed in a separate account for the benefit of Beneficiary and Grantor and disbursed in a manner approved by Beneficiary to restore, repair, replace and rebuild the Mortgaged Property as nearly as possible to its value, condition and character immediately prior to such damage, loss or destruction. All work to be performed in connection therewith shall be pursuant to a written contract therefore which contract shall be subject to the prior approval of Beneficiary. In the event such insurance proceeds are less than $25,000, no such special account shall be required. In the event Beneficiary determines that such proceeds are insufficient for each purpose and Grantor fails to provide additional funds or in the event any such insurance proceeds remain after the Mortgaged Property has been so restored or repaired, such insurance proceeds shall be applied against the indebtedness in a manner determined by Beneficiary.

**4.8.    Leases and Rents.** Grantor shall (a) duly and punctually perform and comply with any and all representations, warranties, covenants and agreements expressed as binding upon it under each of the Leases; (b) appear and/or defend any action or proceeding arising under or in any manner connected with any of the Leases or the representations, warranties, covenants and agreements of it or of any other party or parties thereto; (c) not to do or permit to be done anything to impair the security of any of the Leases; (d) except for tenant deposits, not to collect any of the Rent more than thirty (30) days in advance of the time when the same become due under the terms of such Leases, (e) not to discount any future accruing Rent, (f) to maintain each of the Leases in full force and effect during the full term thereof unless earlier terminated as a result of tenant's breach thereunder, (g) except in the ordinary course of business, prudently exercised, without the prior written consent of Beneficiary, not to amend, modify, or terminate any of the Leases in any material respect, (h) except in the ordinary course of business, not enter into any new Leases without the prior written consent of Beneficiary, and (i) not to assign or grant a security interest in and to any of the Leases to any party other than Beneficiary without the prior written consent of Beneficiary. All leases entered into by Grantor shall be with bona fide third party tenants and on an arm's-length basis unless otherwise approved in writing by Beneficiary. Following an event of default, Beneficiary (i) shall have the right to collect all Rents, incomes and other sums due and owing from the Mortgaged Property directly from any lessee, tenant or any other obligor obligated to pay the same, (ii) at any time may contact each and every such lessee, tenant or obligor and any other party obligated on the

Leases, informing them to make payment of all sums due and owing Grantor or any other party directly to Beneficiary to the credit of Grantor, and (iii) may demand, sue for, compromise and collect any Rents, either under its own name or in the name of Grantor, with or without the consent of Grantor. Grantor will establish, at Beneficiary's request, a separate account into which all Rents and other income from the Land, Improvements, Fixtures and Personalty shall be deposited, which account Grantor hereby pledges and assigns to Beneficiary as additional security for the Indebtedness and Obligations; provided, however, prior to an Event of Default, Grantor shall be entitled to the full use and disposition of funds in such account. Beneficiary may also establish a post office box in the name of Beneficiary to which all Rents shall be sent at the direction of Beneficiary made to all the lessees, tenants or other parties renting, leasing or otherwise using the Mortgaged Property.

4.9.   **Inspection**. Grantor will permit Trustee and Beneficiary, and their agents, representatives and employees, to inspect the Mortgaged Property, including all records related thereto, at all reasonable times, upon notice to Grantor.

4.10.   **Defense of Title**. If the title of the Trustee to, or the interest of Beneficiary in, the Mortgaged Property hereby conveyed, or any part thereof, shall be endangered or shall be attacked, directly or indirectly, Grantor hereby authorizes Beneficiary, at Grantor's expense, to take all necessary, proper and reasonable steps for the defense of such title or interest, including the employment of counsel, the protection or defense of litigation and the compromise or discharge of claims made against such title or interest in the Mortgaged Property. Grantor will indemnify and hold Beneficiary harmless from and against any and all loss, cost, damage, liability or expense incurred by Beneficiary in protecting its interests hereunder in such an event (including all court costs and reasonable attorneys' fees and expenses).

4.11.   **Future Impositions**. At any time any law shall be enacted imposing or authorizing the imposition of any tax upon this Deed of Trust or upon any rights, titles, liens or security interest created hereby or upon the Note, or any part thereof, Grantor shall immediately pay all such taxes; provided that, in the alternative, Grantor may, in the event of the enactment of such a law, and must, if it is unlawful for Grantor to pay such taxes, prepay the Note in full within ninety (90) days after demand therefore by Beneficiary.

4.12.   **Books, Records and Financial Reports**. Grantor will maintain full and accurate books of account and other records reflecting the results of its operations. At any time, and from time to time, Grantor shall deliver to Beneficiary such other financial data as Beneficiary shall reasonably request with respect to the ownership, maintenance, use and operation of the Mortgaged Property, and Beneficiary shall have the right, at reasonable times and upon reasonable notice, to audit Grantor's, Maker's and/or Guarantor's books of account and records relating to the Mortgaged Property, all of which shall be maintained and made available to Beneficiary and Beneficiary's representatives for such purpose in Grantor's offices or at such other location as Beneficiary may approve.

4.13.   **Late Charge**. At the option of Beneficiary, Grantor will pay a "late charge" equal to five percent (5%) of any installment on the Note when paid more than 15 days after the due date thereof, to cover the extra expenses involved in handling delinquent payments, subject to the limitations of Paragraph 12.10 hereof.

4.14.   **Notice of Liabilities**. Grantor will regularly inform Beneficiary of all actual and contingent liabilities and will immediately inform Beneficiary of any material changes from Grantor's prior disclosure.

4.15.   **Lien Status**. Grantor will protect the lien and security interest status of this Deed of Trust and the other Security Documents. If any lien or security interest is asserted against the Mortgaged Property (other than Permitted Encumbrances), Grantor will, and at its own cost and expense, (a) promptly pay the underlying claim in full or take such other action so as to cause same to be released or, if permitted by Beneficiary in Beneficiary's sole discretion, bonded to Beneficiary's satisfaction and (b) within five (5) days from the date Grantor obtains notice of such lien or security interest, give Beneficiary notice of such lien or security interest. Such notice shall specify who is asserting such lien or security interest and shall detail the origin and nature of the underlying claim giving rise to such asserted lien or security interest.

4.16.   **Indemnification**. Grantor will defend, at its own cost and expense, and hold Beneficiary harmless from, any action, proceeding or claim affecting the Mortgaged Property or the Security Documents accruing from or after the date hereof and all costs and expenses incurred by Beneficiary in protecting its interests hereunder in such an event (including all court costs and attorneys' fees) shall be borne by Grantor. The above notwithstanding Grantor shall have no obligation to indemnify Beneficiary from claims resulting from the gross negligence or intentional misconduct of Beneficiary.

4.17.   **Maintenance of Rights-of-Way, Easements, and Licenses**. Grantor will maintain, preserve and renew all rights-of-way, easements, grants, privileges, licenses and franchises reasonably necessary for the use of the Mortgaged Property from time to time and will not, without the prior consent of Beneficiary, initiate, join in or consent to any private restrictive covenant or other public or private restriction as to the use of the Mortgaged Property. Grantor shall, however, comply with all restrictive covenants which may at any time affect the Mortgaged Property, zoning ordinances and other public or private restrictions as to the use of the Mortgaged Property.

7

4.18.    Estoppel Certificate.    Grantor shall at any time and from time to time furnish promptly upon request by Beneficiary a written statement in such form as may be required by Beneficiary stating that the Note, this Deed of Trust and the other Security Documents are valid and binding obligations of Grantor, enforceable against Grantor in accordance with their terms; the unpaid principal balance of the Note; the date to which interest on the Note is paid; that the Note, this Deed of Trust and the other Security Documents have not been released, subordinated or modified; and that there are no offsets or defenses against the enforcement of the Note, this Deed of Trust or any other Security Documents, or if any of the foregoing statements are untrue, specifying the reasons therefore.

## ARTICLE V
## NEGATIVE COVENANTS

In addition to the covenants in the Loan Agreement, Grantor hereby covenants and agrees with Beneficiary that, until the entire indebtedness shall have been paid in full and all of the Obligations shall have been fully performed and discharged:

5.1.    Use Violations.    Grantor will not use, maintain, operate or occupy, or allow the use, maintenance, operation or occupancy of the Mortgaged Property in a manner which (a) violates any Legal Requirement, (b) may be dangerous unless safeguarded as required by law, (c) constitutes a public or private nuisance or (d) makes void, voidable or cancelable, or increases the premium of, any insurance then in force with respect thereto.

5.2.    Alterations.    Grantor will not commit or permit any waste of the Mortgaged Property and will not, without the prior written consent of Beneficiary which shall not be unreasonably withheld, make or permit to be made any alterations or additions to the Mortgaged Property of a material nature.

5.3.    Replacement of Fixtures and Personalty.    Grantor will not, without the prior written consent of Beneficiary, permit any of the Fixtures or Personalty to be removed at any time from the Land or Improvements unless the removed item is removed temporarily for maintenance or repair or, if removed permanently, is replaced by an article of equal suitability and value, owned by Grantor, free and clear of any lien or security interest except such as may be first approved in writing by Beneficiary.

5.4.    No Further Encumbrances or Loans.    Grantor will not, without the prior written consent of Beneficiary (which consent will not be unreasonably withheld), create, place, suffer or permit to be created or placed or, through any act or failure to act, acquiesce in the placing of or allow to remain, any mortgage, pledge, lien (statutory, constitutional or contractual), security interest, encumbrance or charge on, or conditional sale or other title retention agreement, regardless of whether same are expressly subordinate to the liens of the Security Documents, with respect to the Mortgaged Property, other than the Permitted Encumbrances. Grantor shall not make any loans to third persons for any reason, without the consent of Beneficiary. Without hereby implying the consent of Beneficiary in its sole discretion or may be predicated upon any terms, conditions and covenants of any such deed of trust, mortgage, lien, security interest, encumbrance or other charge on the Mortgaged Property to declare a default thereunder or institute foreclosure or other proceedings for the enforcement of its remedies thereunder.

5.5.    Transfer of Mortgaged Property.    Without the prior written consent of Beneficiary, Grantor shall not (i) sell, lease, exchange, assign, transfer, convey or otherwise dispose of all or any part of the Mortgaged Property or any interest therein or attempt to do any of the same (except for the disposition of worn-out or obsolete personal property or fixtures under the circumstances described herein), including, without limitation, transfers by option contract, contract of sale or contract for deed, transactions in the nature of assumption, transactions in the nature of a taking subject to, transactions using a wrap-around technique, or (ii) permit legal or equitable title to the Mortgaged Property, or any interest therein, to vest in any other party, in any manner whatsoever, by operation of law or otherwise; it being understood that the consent of Beneficiary required hereunder may be refused by Beneficiary in its sole discretion or may be predicated upon any terms, conditions and covenants deemed advisable or necessary in the sole discretion of Beneficiary, including, without limitation, the right to change the interest rate, date of maturity or payments of principal and/or interest on the Note, to require payment of any amount as additional consideration as a transfer fee or otherwise and to require assumption of the Note and this Deed of Trust.

5.6.    Additional Covenants.

(a)    Grantor will not:

(i)    Change or alter its basic business;

(ii)    Enter into transactions with its affiliates except as may be at arms length and on terms competitive with those entered into with unaffiliated third parties.

(b)     Grantor will not, without the consent of the Secured Party (such consent which will not be unreasonably withheld), (i) dissolve, liquidate or consolidate with or into any other person; (ii) acquire by purchase, lease or otherwise all or substantially all of the assets or capital stock of any person; (iii) sell all or any substantial part of its assets outside of the ordinary course of its business; or (iv) amend (or permit amendment of) its articles of organization, or otherwise reorganize its business or structure.

5.7.     **Restrictions and Annexation.** Grantor shall not without the prior written consent of Beneficiary, which may be granted or withheld at the sole discretion of Beneficiary, impose or amend any restrictive covenants or encumbrances upon the Mortgaged Property, amend, modify or terminate any existing easement, developer's contract or other agreement relating to any of the Mortgaged Property, assign or transfer any rights, as declarant, owner, beneficiary, member or otherwise, under any declaration of covenants or in regard to any owners association, vote or take any action under or in regard to any such declaration of covenants or owners association which may have a material adverse effect on Grantor's or Beneficiary's rights, or execute, file, modify or terminate any subdivision plat affecting the Mortgaged Property, take any action whatsoever to convert the Mortgaged Property or any part thereof to a condominium or cooperative, or consent to the annexation of the Mortgaged Property to any city or seek or consent to any change to or modification of the zoning of the Mortgaged Property or any planned unit development affecting any of the Mortgaged Property.

### ARTICLE VI
### EVENTS OF DEFAULT

An "Event of Default" shall exist if any one or more of the following events shall occur:

6.1.     **Payment of Indebtedness.**

(a)     If Grantor and/or Maker shall fail, refuse or neglect to pay, in full, all of the indebtedness on the maturity date thereof or any installment or portion of the indebtedness as and when the same shall become due and payable, whether at the due date thereof stipulated in the Security Documents or at a date fixed for prepayment or by acceleration or otherwise.

(b)     If Grantor and/or Maker is not the maker of any particular indebtedness, then if such maker of such indebtedness fails, refuses or neglects to pay, in full, all of the indebtedness on the maturity date thereof or any installment or portion of the indebtedness as and when the same shall become due and payable, whether at the due date thereof or at a date fixed for prepayment or by acceleration or otherwise.

6.2.     **Performance of Obligations.** If Grantor shall fail, refuse or neglect to perform and discharge fully and timely any of the Obligations as and when required and such failure (other than a failure described in Section 6.1) shall continue for 15 days after written notice of such failure is given by Beneficiary to Grantor.

6.3.     **False Representation.** If any material representation or warranty made by Grantor, Guarantor, Maker or others in, under or pursuant to the Security Documents or any other documents executed in connection therewith shall be false or erroneous, or shall omit any fact the inclusion of which is necessary to prevent the facts therein from being materially misleading.

6.4.     **Judgment.** If any final money judgment shall be rendered against Grantor, Maker, or any Guarantor while such party is owner of the Mortgaged Property or has personal liability obligations under the Security Documents and the same shall not be paid or execution on the same shall not be stayed by perfection of an appeal or other appropriate action.

6.5.     **Voluntary Bankruptcy.** If Grantor, Maker or any Guarantor while such party is owner of the Mortgaged Property or has any personal liability obligations under the Security Documents shall (a) seek entry of an order for relief as a debtor in a proceeding under the Bankruptcy Code, (b) seek, consent to or not contest the appointment of a receiver or trustee for itself or himself or for all or any part of its or his property, (c) file a petition seeking relief under the bankruptcy, arrangement, reorganization or other debtor relief laws of the United States or any state or any other competent jurisdiction, (d) make a general assignment for the benefit of its or his creditors or (e) admit in writing its or his inability to pay its or his debts as they mature.

6.6.     **Involuntary Bankruptcy.** If while Grantor, Maker or any Guarantor is owner of the Mortgaged Property or has any personal liability obligations under the Security Documents, (a) a petition is filed against Grantor, Maker or any Guarantor seeking relief under the bankruptcy, arrangement, reorganization or other debtor relief laws of the United States or any state or other competent jurisdiction or (b) a court of competent jurisdiction enters an order, judgment or decree appointing, without the consent of Grantor, Maker or any Guarantor, a receiver or trustee for it or him, or for all or any part of its or his property.

6.7.    **Foreclosure of Other Liens.** If the holder of any lien or security interest on the Mortgaged Property (without implying Beneficiary's consent to such sale or the existence, placing, creating or permitting of any lien or security interest) institutes foreclosure or other proceedings for the enforcement of its remedies thereunder and any such proceedings shall not be stayed or discharged within ten (10) days thereafter.

6.8.    **Sale, Lease or Other Transfer.** Any sale, lease, exchange, assignment, conveyance, transfer of possession or other disposition of the Mortgaged Property or any interest therein or any part thereof by Grantor without the prior written consent of Beneficiary. Nothing in this Paragraph 6.8 shall in any way affect or modify the terms of Paragraph 5.4 hereof. Furthermore, notwithstanding anything in the foregoing, Grantor shall have the right to sell or otherwise dispose of worn or obsolete items of furniture, furnishings or fixtures if such items are simultaneously replaced by new like items of at least comparable value, provided that, if the value of such items exceeds $50,000.00, Grantor gives Beneficiary at least 20 days' prior written notice of any such sale or other disposition and the items of personal property that will be affected.

6.9.    **Title and Lien Priority.** If title of the Grantor to any or all of the Mortgaged Property or the status of this Deed of Trust as a valid first lien and security interest on the Mortgaged Property subject only to the Permitted Encumbrances, shall be challenged or endangered by any party whatsoever, and Grantor shall fail to cure the same upon demand by Beneficiary.

6.10.    **Other Defaults.** The occurrence of any Event of Default, as defined or described in any way or the other Security Documents including but not limited to, any default under the Loan Agreement.

6.11.    **Levy on Assets.** While Maker, Grantor or any Guarantor is owner of the Mortgaged Property or has any personal liability obligations under the Security Documents, a levy on any of the assets of the Maker, Grantor or any Guarantor.

6.12.    **Liquidation, Death or Incapacity of Grantor.** If Grantor dissolves, liquidates, merges or consolidates or any interest in Grantor is sold, assigned, transferred, mortgaged, pledged, encumbered or otherwise disposed of, voluntarily or involuntarily, including, without limitation, any sale or transfer of a partnership or other ownership interest to any third party, or an admission of a new general partner, limited partner or member, or any such attempted sale, transfer, admission or alteration without the prior written consent of Beneficiary, or if an individual, any Guarantor dies or becomes legally incapacitated, unless within thirty (30) days of the date of such death or incapacity (a) the representative or legal guardian of such guarantor or his estate affirms in form and substance satisfactory to Beneficiary the obligations of the estate under the guaranty and (b) agrees in form and substance satisfactory to Beneficiary that no distributions shall be made from such estate without the prior written consent of Beneficiary, any distribution without such approval being a Event of Default hereunder.

6.13.    **Guaranty.** Any failure of any representation or warranty made in any guaranty of the payment of the Indebtedness or any part thereof to be true and correct in all material respects or any failure to perform or other breach of any covenant in said guaranty.

6.14.    **Destruction of Improvements.** If the Mortgaged Property is demolished, destroyed or substantially damaged so that (in Beneficiary's judgment) it cannot be restored or rebuilt with available funds including funds received under insurance policies to the condition existing immediately prior to such demolition, destruction or damage within a reasonable period of time.

## ARTICLE VII
## DEFAULT AND FORECLOSURE

If an Event of Default shall occur, Beneficiary may, at Beneficiary's election and by and through Trustee or otherwise, exercise any or all of the following rights, remedies and recourses, in addition to any other remedy which Beneficiary may have:

7.1.    **Acceleration and Future Advances.** Beneficiary may declare the entire Indebtedness, including the Note, Principal Balance (defined hereby as meaning the then unpaid principal balance on the Note), the accrued interest and any other accrued but unpaid interest thereon, court costs and attorney's fees thereunder immediately due and payable, without notice of intent to accelerate or of acceleration, presentment, protest, demand or action of any nature whatsoever (each of which hereby is expressly waived by Grantor), whereupon the same shall become immediately due and payable. Additionally, Beneficiary shall not be required to make any further advances on the Note or other Security Documents upon the occurrence of an Event of Default or any event which, with the giving of notice or passing of time, would constitute an Event of Default.

7.2.    **Entry on Mortgaged Property.** Beneficiary may enter upon the Mortgaged Property and take exclusive possession thereof and of all books, records and accounts relating thereto without notice and without being guilty of trespass. If Grantor remains in possession of all or any part of the Mortgaged Property after an Event of Default and without Beneficiary's prior written consent thereto, Beneficiary may, without notice to Grantor, invoke any and all legal remedies to dispossess Grantor, including specifically one or more actions for forcible entry and detainer, trespass to try title and writ of restitution. Nothing contained in the foregoing sentence shall, however, be construed to impose any greater obligation or any prerequisites

10

to acquiring possession of the Mortgaged Property after an Event of Default than would have existed in the absence of such sentence.

7.3.    **Operation of Mortgaged Property.** Beneficiary may hold, lease, manage, operate or otherwise use or permit the use of the Mortgaged Property, either itself or by other persons, firms or entities, in such manner, for such time and upon such other terms as Beneficiary may deem to be prudent and reasonable under the circumstances (making such repairs, alterations, additions and improvements thereto and taking any and all other action with reference thereto, from time to time, as Beneficiary shall deem necessary or desirable), and apply all Rents and other amounts collected by Trustee in connection therewith in accordance with the provisions of Paragraph 7.12 herein.

7.4.    **Foreclosure and Sale.**

(a)    Beneficiary may, by and through the Trustee, or otherwise, sell or offer for sale the Mortgaged Property in such portions, order and parcels as Beneficiary may determine, with or without having first taken possession of same, to the highest bidder for cash at public auction. Such sale shall be made at the place designated by law in the county in which the Land (or any of that portion thereto to be sold) is situated (whether the parts or parcels thereof, if any, in different counties are contiguous or not, and without the necessity of having any personal property hereby mortgaged present at such sale) on the first Tuesday of any month between the hours of 10:00 a.m. and 4:00 p.m. after advertising the time, place and terms of sale and that portion of the Mortgaged Property to be sold by posting or causing to be posted written or printed notice thereof at least twenty-one (21) days preceding the date of said sale at the courthouse door of the county in which the sale is to be made and at the courthouse door of any other county in which a portion of the Mortgaged Property may be situated, which notice may be posted by the Trustee acting, or by any person acting for him, and the holder of the Indebtedness has, at least twenty-one (21) days preceding the date of sale, served written or printed notice of the proposed sale by certified mail on each debtor obligated to pay the Indebtedness secured by this Deed of Trust according to the records of Beneficiary by the deposit of such notice, enclosed in a postpaid wrapper, properly addressed to such debtor at debtor's most recent address as shown by the records of the holder of the Indebtedness, in a post office or official depository under the care and custody of the United States Postal Service. The affidavit of any person having knowledge of the facts to the effect that such service was completed shall be prima facie evidence of the fact of service. It is the intent hereof that the Trustee shall comply with all notice and filing requirements of § 51.002 of the Texas Property Code (as amended, or such other sections that may be enacted from time to time and governing the non-judicial sale of real property covered by a deed of trust lien).

(b)    Beneficiary may, at its option, accomplish all or any of the aforesaid in such manner as permitted or required by Section 51.002 of the Texas Property Code relating to the sale of real estate or by Chapter 9 of the Texas Business and Commerce Code relating to the sale of collateral after default by a debtor (as said article and chapter now exist or may be hereinafter amended or succeeded), or by any other present or subsequent articles or enactments relating to same. Nothing contained in this Paragraph shall be construed to limit in any way Trustee's right to sell the Mortgaged Property by private sale if, and to the extent that such private sale is permitted under the laws of the State where the Mortgaged Property (or that portion thereof to be sold) is located or by public or private sale after entry of a judgment by any court of competent jurisdiction ordering the same. At any such sale:

(i)    whether made under the power herein contained, the aforesaid Section 51.002, any other Legal Requirement or by virtue of any judicial proceedings or any other legal right, remedy or recourse, it shall not be necessary for Trustee to have physically present, or to have constructive possession of, the Mortgaged Property (Grantor shall deliver to Trustee any portion of the Mortgaged Property not actually or constructively possessed by Trustee immediately upon demand by Trustee) and the title to and right of possession of any such property shall pass to the purchaser thereof as completely as if the same had been actually present and delivered to purchaser at such sale;

(ii)    each instrument of conveyance executed by Trustee shall contain a general warranty of title, binding upon Grantor;

(iii)    each and every recital contained in any instrument of conveyance made by Trustee shall be prima facie evidence of the truth and accuracy of the matters recited therein, including, without limitation, nonpayment of the Indebtedness, advertisement and conduct of such sale in the manner provided herein and otherwise by law and appointment of any successor Trustee hereunder;

(iv)    any and all prerequisites to the validity thereof shall be presumed to have been performed, which presumption may be rebutted by Grantor;

(v)    the receipt of Trustee or of such other party or officer making the sale shall be sufficient to discharge to the purchaser or purchasers for his or their purchase money, and no such purchaser or purchasers, or his or their assigns or

personal representatives, shall thereafter be obligated to see to the application of such purchase money or be in any way answerable for any loss, misapplication or nonapplication thereof;

(vi)    to the fullest extent permitted by law, Grantor shall be completely and irrevocably divested of all of its right, title, interest, claim and demand whatsoever, either at law or in equity, in and to the property sold, and such sale shall be a perpetual bar, both at law and in equity, against Grantor and against all other persons claiming or to claim the property sold or to any part thereof by, through or under Grantor; and

(vii)    to the extent and under such circumstances as are permitted by law, Beneficiary may be a purchaser at any such sale.

7.5.    **Divestment of Rights; Tenant at Sufferance.** After sale of the Mortgaged Property, or any portion thereof, Grantor will be divested of any and all interest and claim thereto, including any interest or claim to all insurance policies, bonds, loan commitments and other intangible property covered hereby. Additionally, with respect to the Land, Improvements, Fixtures and Personalty, after a sale of all or any portion thereof, Grantor (and all parties in possession) will be considered a tenant at sufferance of the purchaser of the same, and said purchaser shall be entitled to immediate possession thereof, and if Grantor shall fail to vacate the Mortgaged Property immediately, Beneficiary may and shall have the right, without further notice to Grantor, to go into any justice court in any precinct or county in which the Mortgaged Property is located and file an action in forcible entry and detainer, which action shall lie against the Grantor or its assigns or legal representatives, as a tenant at sufferance. This remedy is cumulative of any and all remedies the purchaser may have hereunder or otherwise.

7.6.    **Trustee or Receiver.** (a) Upon, or at any time after, commencement of foreclosure of the lien and security interest provided for herein or any legal proceedings hereunder, Beneficiary may make application to a court of competent jurisdiction, as a matter of strict right and without notice to Grantor or regard to the adequacy of the Mortgaged Property for the repayment of the Indebtedness, for appointment of a receiver of the Mortgaged Property and Grantor does hereby irrevocably consent to such appointment. Any such receiver shall have all the usual powers and duties of receivers in similar cases, including the full power to rent, maintain and otherwise operate the Mortgaged Property upon such terms as may be approved by the court, and shall apply such Rents in accordance with the provisions of Paragraph 7.12 herein.

(b)    Beneficiary may exercise any and all other rights, remedies and recourses granted under the Security Documents or now or hereafter existing in equity, at law, by virtue of statute or otherwise.

7.7.    **Separate Sales.** The Trustee may sell all or any portion of the Mortgaged Property together or in lots or parcels and in such manner and order as Trustee, in its sole discretion, may elect. The sale or sales by the Trustee of less than the whole of the Mortgaged Property shall not exhaust the power of sale herein granted, and the Trustee is specifically empowered to make successive sale or sales under such power until the whole of the Mortgaged Property shall be sold; and if the proceeds of such sale or sales of less than the whole of such Mortgaged Property shall be less than the aggregate of the Indebtedness and the expense of executing this trust, this Deed of Trust and the lien, security interest and assignment hereof shall remain in full force and effect as to the unsold portion of the Mortgaged Property just as though no sale or sales have been made; provided, however, that Grantor shall never have any right to require the sale or sales of less than the whole of the Mortgaged Property, but Beneficiary shall have the right, at its sole discretion, to request the Trustee to sell less than the whole of the Mortgaged Property. As among the various counties in which items of the Mortgaged Property may be situated, sales in such counties may be conducted in any order that the Trustee may deem expedient; and any one or more of such sales may be conducted in the same month, or in successive or different months, as the Trustee may deem expedient. If default is made hereunder, the holder of the Indebtedness or any part thereof on which the payment is delinquent shall have the option to proceed as if under a full foreclosure, conducting the sale as herein provided without declaring the entire Indebtedness due, and if sale is made because of default of an installment, or a part of an installment, such sale may be made subject to the unmatured part of the Note and the Indebtedness; and such sale, if so made, shall not in any manner affect the unmatured part of the Indebtedness but as to such unmatured part, this Deed of Trust shall remain in full force and effect as though no sale had been made under the provisions of this paragraph. Any number of sales may be made hereunder without exhausting the right of sale for any unmatured part of the Indebtedness secured hereby.

7.8.    **Remedies Cumulative, Concurrent and Nonexclusive.** Trustee and Beneficiary shall have all rights, remedies and recourses granted in the Security Documents and available at law or equity (including specifically those granted by the Uniform Commercial Code in effect and applicable to the Mortgaged Property or any portion thereof) and the same (a) shall be cumulative and concurrent; (b) may be pursued separately, successively or concurrently against Grantor, Maker, any Guarantor or others obligated under the Note, or against the Mortgaged Property, or against any one or more of them at the sole discretion of Beneficiary; (c) may be exercised as often as occasion therefore shall arise, it being agreed by Grantor that the exercise or failure to exercise any of the same shall in no event be construed as a waiver or release thereof or of any other right, remedy or recourse; and (d) are intended to be, and shall be, nonexclusive.

7.9.    **Release of and Resort to Collateral.** Any part of the Mortgaged Property may be released by the Beneficiary without affecting, subordinating or releasing the lien, security interest and assignment thereof against the remainder. The lien, security interest and other rights granted hereby shall not affect or be affected by any other security taken for the same indebtedness or any part thereof. The taking of additional security, or the rearrangement, extension or renewal of the indebtedness, or any part thereof, shall not release or impair the lien, security interest and other rights granted hereby or affect the liability of any endorser, guarantor or surety, or improve the right of any permitted junior lienholder; and this Deed of Trust, as well as any instrument given to secure any rearrangement, renewal or extension of the indebtedness secured hereby, or any part thereof, shall be and remain a first and prior lien, except as otherwise provided herein, on all of the Mortgaged Property not expressly released until the indebtedness is completely paid.

7.10.    **Waiver of Redemption, Notice and Marshalling of Assets.** To the fullest extent permitted by law, Grantor hereby irrevocably and unconditionally waives and releases (a) all benefits that might accrue to Grantor, Maker and/or Guarantor by any present or future laws exempting the Mortgaged Property from attachment, levy or sale on execution or providing for any appraisement, valuation, stay of execution, exemption from civil process, redemption or extension of time for payment; (b) all notices of any Event of Default (except as may be provided for under the terms hereof) or of Beneficiary's or Trustee's election to exercise or the actual exercise of any right, remedy or recourse provided for under the Security Documents; (c) any right to appraisal or marshalling of assets or a sale in inverse order of alienation; (d) the exemption of homestead; and (e) the administration of estates of decedents, or other matter whatsoever to defeat, reduce or affect the right of Beneficiary under the terms of this Deed of Trust, to sell the Mortgaged Property for the collection of the indebtedness secured hereby (without any prior or different resort for collection) or the right of Beneficiary, under the terms of this Deed of Trust, to the payment of the indebtedness out of the proceeds of sale of the Mortgaged Property in preference to every other person and claimant whatever (only reasonable expenses of such sale being first deducted). Grantor expressly waives and relinquishes any right or remedy which it may have or be able to assert by reason of the provisions of Chapter 34 of the Business and Commerce Code of the State of Texas pertaining to the rights and remedies of sureties.

7.11.    **Discontinuance of Proceedings.** In case Beneficiary shall have proceeded to invoke any right, remedy or recourse permitted under the Security Documents and shall thereafter elect to discontinue or abandon the same for any reason, Beneficiary shall have the unqualified right so to do and, in such event, Grantor and Beneficiary shall be restored to their former positions with respect to the indebtedness, the Obligations, the Security Documents, the Mortgaged Property and otherwise, and the rights, remedies, recourses and power of Beneficiary shall continue as if same had never been invoked.

7.12.    **Application of Proceeds; Deficiency Obligation; Limitation on Liability.** The proceeds of any sale of, and the rents and other income generated by the holding, leasing, operating or other use of, the Mortgaged Property shall be applied by Beneficiary (or the receiver, if one is appointed) to the extent that funds are so available therefrom in the following orders of priority: (a) first, to the payment of the cost and expenses of taking possession of the Mortgaged Property and of holding, using, leasing, maintaining, repairing, improving and selling the same, including, without limitation, (i) reasonable Trustee's fees and receiver's fees; (ii) costs of advertisement; (iii) reasonable attorneys' fees and accountants' fees; (iv) court costs; and (v) payment of any and all impositions and prior liens, security interests or other rights, titles or interests on the Mortgaged Property (without in any way implying Beneficiary's prior consent to the creation thereof); (b) second, to the payment of all amounts, other than the principal amount of the indebtedness and accrued but unpaid interest, which may be due to the Beneficiary under the Security Documents, together with interest thereon as provided therein; (c) third, to the payment of all accrued but unpaid interest which may be due on the Note; (d) fourth, to the payment of the principal amount outstanding on the Note in inverse order of maturity; (e) fifth, to the payment of any indebtedness or obligation secured by a subordinate deed of trust or security interest on the Mortgaged Property; and (f) sixth, to Grantor, Maker, Grantor, Guarantor or any other party liable on the indebtedness and the Obligations shall be liable for any deficiency remaining in the indebtedness and Obligations subsequent to any sale referenced in this Section.

7.13.    **Purchase by Beneficiary.** Beneficiary shall have the right to become the purchaser at the sale of the Mortgaged Property hereunder pursuant to any other means and shall have the right to be credited on the amount of its bid therefore all of the indebtedness and Obligations due and owing as of the date of such sale.

7.14.    **Disaffirmation of Contracts.** The purchaser at any Trustee's or foreclosure sale hereunder may disaffirm any easement granted, or rental, lease or other contract made in violation of any provisions of this Deed of Trust and may take immediate possession of the Mortgaged Property free from, and despite the terms of, such grant of easement and rental, lease or other contract.

## ARTICLE VIII
## CONDEMNATION

8.1.    **Application of Proceeds.** If the Mortgaged Property, or any part thereof, shall be condemned or otherwise taken for public or quasi-public use under the power of eminent domain, or be transferred in lieu thereof, all damages or other

Deed of Trust, Security Agreement, Assignment
of Leases and Rentals and Financing Statement

amounts awarded for the taking of, or injury to, the Mortgaged Property shall be paid to the Beneficiary who shall have the right, in its sole discretion, to apply the amounts so received against (i) the costs and expenses of Beneficiary or Trustee, including reasonable attorneys' fees incurred in connection with collection of such amounts and (ii) the balance against the Indebtedness and Obligations; provided, however, if the proceeds of such award are equal to or less than $25,000 Grantor shall receive such proceeds to restore, repair, replace and rebuild the Mortgaged Property as nearly as possible to its value, condition and character immediately prior to such taking; provided further that if the proceeds are greater than $25,000 and if Beneficiary determines, in its sole discretion, that the proceeds of such award are sufficient to restore, repair, replace and rebuild the Mortgaged Property as nearly as possible to its value, condition and character immediately prior to such taking, or if Grantor provides additional sums to Beneficiary's satisfaction so that the aggregate of such sums and the proceeds of such award will be sufficient for such purpose, the proceed of such award, together with additional sums provided by Grantor, shall be placed in a separate account for the benefit of Beneficiary and Grantor to be used to restore, repair, replace and rebuild the Mortgaged Property as nearly as possible to its value, condition and character immediately prior to such taking. All work to be performed in connection therewith shall be pursuant to a written contract therefore, which contract shall be subject to the prior approval of Beneficiary. In the event Beneficiary determines that the aggregate of such proceeds are insufficient for such purpose and Grantor does not supply sufficient funds to make up such insufficiencies, or to the extent that any funds remain after the Mortgaged Property has been so restored and repaired, the same shall be applied against the Indebtedness and the Obligations. To enforce its rights hereunder, Beneficiary shall be entitled, at its option, to participate in and control any condemnation proceedings and to be represented therein by counsel of its own choice, and Grantor will deliver, or cause to be delivered, to Beneficiary such instruments as may be requested by it from time to time to permit such participation. In the event Beneficiary, as a result of any such judgment, decree or award, reasonably believes that the payment or performance of any obligation secured by this Deed of Trust is impaired, Beneficiary may, without notice, declare all of the Indebtedness secured hereby immediately due and payable.

## ARTICLE IX
### SECURITY AGREEMENT AND
### ASSIGNMENT OF LEASES & RENTS

9.1.    **Security Interest**. This Deed of Trust shall be construed as a Deed of Trust on real property, and it shall also constitute and serve as a security agreement on personal property within the meaning of, and shall constitute until the grant of this Deed of Trust shall terminate as provided in Article II hereof, a pledge and assignment and a first lien security interest under the Uniform Commercial Code (being Chapter 9 of the Texas Business and Commerce Code as to the property within the scope thereof and situated in the State of Texas) with respect to the Accounts, Personalty, Fixtures, Leases and Rents. Grantor has granted, bargained, conveyed, assigned, transferred and set over, and by these presents does grant, bargain, convey, assign, transfer and set over unto Trustee (acting as both a trustee and agent for the Beneficiary under the terms hereof) a security interest in and to all of Grantor's right, title and interest in, to and under the Accounts, Personalty, Fixtures, Leases and Rents in trust, to secure the full and timely payment of the Indebtedness and the full and timely performance and discharge of the Obligations. Upon an Event of Default, Grantor shall gather all of the Mortgaged Property which is personally at a location designated by the Beneficiary for sale pursuant to the terms hereof. Any capitalized term used in this paragraph 9.1 not defined in this Agreement shall be as defined in Chapter 9 of the Texas Business and Commerce Code.

9.2.    **Financing Statements**. Grantor shall execute and deliver to Beneficiary, in form and substance satisfactory to Beneficiary, such financing statements and such further assurances as Beneficiary may, from time to time, consider reasonably necessary to create, perfect and preserve Beneficiary's security interest herein granted, and Beneficiary may cause such statements and assurances to be recorded and filed at such times and places as may be required or permitted by law to so create, perfect and preserve such security interest. Pursuant to the Texas Business and Commerce Code this Deed of Trust shall be effective as a Financing Statement filed as a Fixture filing from the date of its filing for record covering the Fixtures and Personalty. The address of Grantor, as Debtor, and Beneficiary, as Secured Party, are as set forth herein. A portion of the above described goods are or are to become fixtures related to the Land and Improvements of which Grantor is the record title owner.

9.3.    **Uniform Commercial Code Remedies**. Trustee and Beneficiary shall have all the rights, remedies and recourses with respect to the Personalty, Fixtures, Leases and Rents afforded a secured party by the aforesaid Uniform Commercial Code in addition to, and not in limitation of, the other rights, remedies and recourses afforded by the Security Documents and at law.

9.4.    **No Obligation of Trustee or Beneficiary**. The assignment and security interest herein granted shall not be deemed or construed to constitute Trustee or Beneficiary as a trustee in possession of the Mortgaged Property, to obligate Trustee or Beneficiary to operate the Mortgaged Property or attempt to do the same, or take any action, incur expenses or perform or discharge any obligation, duty or liability whatsoever under any of the Leases or otherwise.

9.5.    **Assignment.** For Ten and No/Dollars ($10.00) and other good and valuable consideration, including the Indebtedness evidenced by the Note, the receipt and sufficiency of which are hereby acknowledged, Grantor has GRANTED, BARGAINED, SOLD and CONVEYED, and by these presents does GRANT, BARGAIN, SELL and CONVEY absolutely unto Beneficiary the Leases and the Rents subject only to the Permitted Encumbrances applicable thereto and the hereinafter referenced License. TO HAVE AND TO HOLD the Leases and the Rents unto Beneficiary, forever, and Grantor does hereby bind itself, its successors and assigns to warrant and forever defend the title to the Leases and the Rents unto Beneficiary against every person whomsoever lawfully claiming or to claim the same or any part thereof; provided, however, if Grantor shall pay or cause to be paid the Indebtedness as and when same shall become due and payable and shall perform and discharge or cause to be performed and discharged, the Obligations on or before the date same are to be performed and discharged, then this assignment shall terminate and be of no further force and effect, and all rights, titles and interests conveyed pursuant to this assignment shall become revested in Grantor without the necessity of any further act or requirement by Grantor, Trustee or Beneficiary. Notwithstanding anything contained herein or in any of the other Security Documents to the contrary, the assignment in this Paragraph is an absolute, unconditional and presently effective assignment and not merely a security interest.

9.6.    **Limited License.** Beneficiary hereby grants to Grantor a limited license (the "License"), nonexclusive with the rights of Beneficiary reserved in Section 9.8 hereof, to exercise and enjoy all incidences of ownership of the Leases and the Rents, including specifically but without limitation the right to collect, demand, sue for, attach, levy, recover and receive the Rents, and to give proper receipts, releases and acquittances therefore. Grantor hereby agrees to receive all Rents as trustee for Beneficiary, and to apply the Rent so collected, first to the payment of the Indebtedness as hereinabove set forth and the satisfaction and discharge of the Obligations. Thereafter, Grantor may use the balance of the Rent collected in any manner not inconsistent with the Security Documents.

9.7.    **Enforcement of Leases.** So long as the License is in effect, Grantor shall (a) duly and punctually perform and comply with any and all material representations, warranties, covenants and agreements expressed as binding upon the landlord under any Lease, (b) maintain each of the Leases in full force and effect during the term thereof, provided that tenant under such Lease is not in default thereunder, (c) appear in and defend any action or proceeding in any manner connected with any of the Leases, (d) deliver to Beneficiary executed counterparts of all Leases and (e) deliver to Beneficiary such further information, and execute and deliver to Beneficiary such further assurances and assignments, with respect to the Leases as Beneficiary may from time to time reasonably request.

Without Beneficiary's prior written consent, Grantor shall not (a) do or knowingly permit to be done anything to impair the value of any of the Leases, (b) except for deposits not to exceed one month's rent for any one lessee, collect any of the Rent more than one (1) month in advance of the time when the same becomes due under the terms of any Lease, (c) discount any future accruing Rent, (d) except in the ordinary course of business prudently exercised, amend, modify or terminate any Lease, (e) assign or grant a security interest in or to the License or any of the Leases, or (f) execute any Lease granting a leasehold interest in the Mortgaged Property.

9.8.    **Suits; Attornment.** Upon and following the occurrence of any Event of Default, Beneficiary hereby reserves and may exercise the right and Grantor hereby acknowledges that Beneficiary has the right (but not the obligation) to collect, demand, sue for, attach, levy, recover and receive any Rent, to give proper receipts, releases and acquittances therefore and, after deducting the expenses of collection, to apply the net proceeds thereof as a credit upon any portion of the Indebtedness selected by Beneficiary, notwithstanding that such portion selected may not then be due and payable or that such portion is otherwise adequately secured. Grantor hereby authorizes and directs any lessee of the Mortgaged Property to deliver any such payment to, and otherwise to attorn all other obligations under the Leases direct to, Beneficiary. Beneficiary may, without necessity of the joinder of Grantor or any third party, and without in any way impairing, affecting or subordinating the lien or security interests created in or evidenced by the Security Documents covering the remainder of the Mortgaged Property, subordinate the lien of this Deed of Trust and the other Security Documents to any Lease or other interest of any third party in and to the Mortgaged Property (at any time prior to full payment of the Indebtedness and the discharge of the performance of the Obligations). Grantor hereby ratifies and confirms all that Beneficiary shall do or cause to be done by virtue of this Article 9. No lessee shall be required to inquire into the authority of Beneficiary to collect any Rent, and any lessee's obligation to Grantor shall be absolutely discharged to the extent of its payment to Beneficiary.

9.9.    **Remedies.** Upon or at any time after the occurrence of any Event of Default, Beneficiary, at its option and in addition to the remedies provided in Article 7 hereof, shall have the complete, continuing and absolute right, power and authority to terminate the License solely by the giving of written notice of termination to Grantor. Upon Beneficiary's giving of such notice, the License shall immediately terminate without any further action being required of Beneficiary. Thereafter, Beneficiary shall have the exclusive right, power and authority to take any and all action as described in Section 9.8 hereof, regardless of whether a foreclosure sale of the remainder of the Mortgaged Property has occurred under this Deed of Trust, or whether Beneficiary or Trustee has taken possession of the remainder of the Mortgaged Property or attempted to do any of the

same. No action referred to in Section 9.8 or this Section 9.9 taken by Beneficiary or Trustee shall constitute an election of remedy.

9.10.    No Obligation of Trustee or Beneficiary. Neither the acceptance by Beneficiary of the assignment granted in this Article 9, nor the granting of any other right, power, privilege or authority in this Article 9 or elsewhere in this Deed of Trust, nor the exercise of any of the aforesaid, shall (a) prior to the actual taking of physical possession and operational control of the Mortgaged Property by Beneficiary or Trustee, be deemed to constitute Beneficiary or Trustee as a "mortgagee in possession" or (b) at any time thereafter, obligate Beneficiary or Trustee (i) to appear in or defend any action or proceeding relating to the Leases, the Rents or the remainder of the Mortgaged Property, (ii) to take any action hereunder, (iii) to extend any money or incur any expenses or perform or discharge any obligation, duty or liability with respect to any Lease, (iv) to assume any obligation or responsibility for any deposits which are not physically delivered to Beneficiary or (v) for any injury or damage to person or property sustained in or about the Mortgaged Property.

9.11.    No Merger of Estates. So long as any part of the Indebtedness and the Obligations secured hereby remain unpaid and undischarged, the fee and leasehold estates to the Mortgaged Property shall not merge but rather shall remain separate and distinct, notwithstanding the union of such estates either in Grantor, Beneficiary, any lessee or any third party by purchase or otherwise.

9.12.    Grantor Indemnities. So long as the License is in effect, Grantor shall indemnify and hold Beneficiary and Trustee harmless from and against any and all liability, loss, cost, damage or expense which Beneficiary or Trustee may incur under or by reason of this assignment, or for any action taken by Beneficiary or Trustee hereunder, or by reason of or in defense of any and all claims and demands whatsoever which may be asserted against Beneficiary or Trustee arising out of the Leases. In the event Beneficiary or Trustee incurs any such liability, loss, cost, damage or expense, the amount thereof together with all reasonable attorneys' fees and interest thereon at the default rate specified in the Note shall be payable by Grantor to Beneficiary or Trustee immediately, without demand, and shall be secured under Article 2 hereof. The above notwithstanding Grantor shall have no obligation to indemnify Beneficiary from claims resulting from the gross negligence or intentional misconduct of Beneficiary.

9.13.    Conflict. It is the intent of the parties that no conflict exists between the absolute assignment contained in this Article 9 and the collateral conveyance contained in Article 2 hereof. However, if and to the extent any such conflict be perceived to exist as to the Leases or the Rents, such conflict shall be resolved in favor of the absolute assignment contained in this Article 9.

## ARTICLE X
### CONCERNING THE TRUSTEE

10.1.    No Liability. Trustee shall not be liable for any error of judgment or act done by Trustee, or be otherwise responsible or accountable under any circumstances whatsoever, except for willful misconduct. Trustee shall not be personally liable in case of entry by him or anyone acting by virtue of the powers herein granted him upon the Mortgaged Property for debts contracted or liability or damages incurred in the management or operation of the Mortgaged Property, except for willful misconduct. Trustee shall have the right to rely on any instrument, document or signature authorizing or supporting any action taken or proposed to be taken by him hereunder believed by him in good faith to be genuine. Trustee shall be entitled to reimbursement for expenses incurred by him in the performance of his duties hereunder and to reasonable compensation for such of his services hereunder as shall be rendered. Grantor will, from time to time, pay compensation due to the Trustee hereunder and reimburse Trustee for and save and hold him harmless from and against any and all loss, cost, liability, damage and expense whatsoever incurred by him in the performance of his duties except for willful misconduct.

10.2.    Retention of Monies. All monies received by Trustee shall, until used or applied as herein provided, be held in trust for the purposes for which they were received, but need not be segregated in any manner from any other monies (except to the extent required by law) and Trustee shall be under no liability for interest on any monies received by him hereunder.

10.3.    Successor Trustee. Trustee may resign by giving notice of such resignation in writing to Beneficiary. If Trustee shall die, resign or become disqualified from acting in the execution of this Trust or shall fail to exercise the same when requested by Beneficiary so to do or if for any reason and without cause Beneficiary shall prefer to appoint a substitute trustee to act instead of the original Trustee named herein, or any prior successor or substitute trustee, Beneficiary shall have full power to appoint a substitute trustee and, if preferred, several substitute trustees in succession who shall succeed to all the estate, rights, powers and duties of the aforenamed Trustee.

10.4.    Succession Instruments. Any new Trustee appointed pursuant to any of the provisions hereof shall, without any further act, deed or conveyance, become vested with all the estates, properties, rights, powers and trusts of its or his

16

Deed of Trust, Security Agreement, Assignment
of Leases and Rentals and Financing Statement

predecessor in the rights hereunder with like effect as if originally named as Trustee herein; but, nevertheless, upon the written request of Beneficiary or his successor trustee, the Trustee ceasing to act shall execute and deliver an instrument transferring to such successor trustee, upon the trust herein expressed, all the estates, properties, rights, powers and trusts of the Trustee so ceasing to act, and shall duly assign, transfer and deliver any of the property and monies held by the Trustee to the successor trustee so appointed in its or his place.

10.6.  **Performance of Duties by Agents.**  Trustee may authorize one or more parties to act on his behalf to perform the ministerial functions required of him hereunder, including without limitation, the transmittal and posting of any notice,

### ARTICLE XI
### HAZARDOUS SUBSTANCES PROVISIONS

To Grantor's actual knowledge, without inquiry, no substances, including without limitation, asbestos or any substance containing asbestos and deemed hazardous under any Hazardous Material Law (defined below), the group of organic compounds as polychlorinated byphenyls, flammable explosives, radioactive materials, chemicals known to cause cancer or reproductive toxicity, pollutants, effluents, contaminants, emissions or rated materials and any items included in the definition of hazardous or toxic waste, materials or substances ("Hazardous Materials") under any law relating to environmental conditions and industrial hygiene, including with limitation, the Resource Conservation and Recovery Act of 1976 ("RCRA"), 42 U.S.C. (6901 et seq., the Comprehensive Environmental Response, Compensation and Liability Act of 1980 ("CERCLA"), 42 U.S.C. ((9601-9657, as amended by the Superfund Amendments and Reauthorization Act of 1986 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. (6901 et seq., The Federal Water Pollution Control Act, 33 U.S.C. (125 et seq., the Clean Air Act, 42 U.S.C. (741 et seq., the Clean Water Act, 33 U.S.C. (7401, the Toxic Substances Control Act, 15 U.S.C. ((2601-2629, the Safe Drinking Water Act, 42 U.S.C, ((3001-300), and all similar federal, state and local environmental statutes, ordinances and the regulations, orders, decrees now or hereafter promulgated thereunder (collectively, the "Hazardous Material Laws"), shall be installed, used, generated, manufactured, treated, handled, refined, produced, processed, stored or disposed of, or otherwise present in, on or under the property;

11.1.  **Compliance with Environmental Laws.**  As used below, and in any of the other Security Documents, "Hazardous Substances" shall mean and include, but shall not be limited to, asbestos or any substance containing asbestos and deemed hazardous under any Hazardous Material Law (defined below), the group of organic compounds as polychlorinated byphenyls, flammable explosives, radioactive materials, chemicals known to cause cancer or reproductive toxicity, pollutants, effluents, contaminants, emissions or rated materials and any items included in the definition of hazardous or toxic waste, materials or substances ("Hazardous Substances") under any law relating to environmental conditions and industrial hygiene, including with limitation, the Resource Conservation and Recovery Act of 1976 ("RCRA"), 42 U.S.C. (6901 et seq., the Comprehensive Environmental Response, Compensation and Liability Act of 1980 ("CERCLA"), 42 U.S.C. ((9601-9657, as amended by the Superfund Amendments and Reauthorization Act of 1986 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. (6901 et seq., The Federal Water Pollution Control Act, 33 U.S.C. (125 et seq., the Clean Air Act, 42 U.S.C. (741 et seq., the Clean Water Act, 33 U.S.C. (7401, the Toxic Substances Control Act, 15 U.S.C. ((2601-2629, the Safe Drinking Water Act, 42 U.S.C ((3001-300) (all such laws, rules and regulations being referred to collectively as "Environmental Laws").  Grantor warrants, represents and covenants as follows:

(a)    Neither the Grantor nor any other person or entity for whose conduct it is or may be responsible is (i) subject to any private or governmental lien or judicial or administrative notice, order or action relating to Hazardous Substances or environmental health and safety problems, impairments or liabilities with respect to any real property, or (ii) is in, or with any applicable notice and/or lapse of time, and/or failure to take certain curative or remedial actions, will be in, either direct or indirect violation of any Environmental Laws.

(b)    Grantor shall not allow any Hazardous Substances to exist or be generated, stored, located, discharged, transported, possessed, managed, processed or otherwise handled on or from the Mortgaged Property and shall comply with all Environmental Laws affecting the Mortgaged Property.

(c)    Grantor shall immediately notify Beneficiary should Grantor become aware of any litigation or threat of litigation relating to any alleged unauthorized release of any Hazardous Substance or the existence of any Hazardous Substance or other environmental health and safety contamination, liability or problem with respect to or arising out of or in connection with the Mortgaged Property. Grantor shall, at its own cost and expense, take all actions (to the extent and at the time or from time to time) as shall be necessary or advisable for the clean-up of the Mortgaged Property, including all removal, containment and remedial actions in accordance with all applicable Environmental Laws (and in all events in a manner satisfactory to Beneficiary), and shall further pay or cause to be paid at no expense to Beneficiary all clean-up, administrative, and enforcement costs of applicable government agencies or the parties protected by such Environmental Laws which may be asserted against the Mortgaged Property, the owner thereof or a lienholder secured thereby but excluding any Costs arising from the actions of Beneficiary. All costs (including, without limitation, those costs set forth above), damages, liabilities, losses,

Deed of Trust, Security Agreement, Assignment
of Leases and Rentals and Financing Statement

claims, expenses (including attorneys' fees and disbursements) which are incurred by Beneficiary, without the requirement that Beneficiary wait for the ultimate outcome of any litigation, claim or other proceeding, shall be indebtedness secured hereby and shall be paid by Grantor to Beneficiary within ten (10) days after notice to Grantor from Beneficiary itemizing the amounts incurred to the effective date of such notice.

    (d)    Grantor hereby covenants and agrees not to do or take any action or omit or fail to take any such action which will result in the unauthorized release of any Hazardous Substance or the existence of any Hazardous Substance or other environmental health and safety contamination, liability or problem with respect to the Mortgaged Property. Upon any such unauthorized release or discovery of the existence of any such Hazardous Substance or other environmental health and safety contamination, liability or problem, Grantor agrees to promptly give written notice to Beneficiary of the exact nature, scope and extent thereof.

    **11.2.**    **Indemnity.** Grantor hereby agrees to indemnify and hold harmless Beneficiary, and its officers, directors, partners, employees and agents, against any liability, loss, claim, damage or expense (including reasonable attorneys' fees and disbursements) to which any of the foregoing parties may become subject insofar as they may arise out of or are based upon any of the foregoing:

    (a)    any violation or claim of violation by Grantor, or its successors or assigns, of Environmental Laws with respect to the Mortgaged Property, or any governmental or judicial claim, order or judgment with respect to the Mortgaged Property;

    (b)    any breach of any of the warranties, representations and covenants by Grantor contained in the Security Documents with respect to Hazardous Substances or Environmental Laws.

    This indemnity shall not be subject to any exculpation, non-recourse or other limitation of liability provisions in the Security Documents, and Grantor acknowledges that its obligations pursuant to this indemnity are unconditional, and are not limited by any such exculpation, non-recourse or similar limitation of liability provisions in the Security Documents.

    **11.3.**    **Survival.** All warranties and representations above shall be deemed to be continuing and shall remain true and correct in all material respects until the Indebtedness has been paid in full, the Obligations completely satisfied, and any limitations period with respect to any claims under each of the Environmental Laws has expired. Grantor's covenants above shall survive any exercise of any remedy by Beneficiary under the Security Documents, including foreclosure of the lien of the Deed of Trust (or deed in lieu thereof or similar actions to the same effect), even if, as a part of such foreclosure, deed in lieu of foreclosure or similar action, the Indebtedness is satisfied in full.

### ARTICLE XII
### MISCELLANEOUS

    **12.1.**    **Survival of Obligations.** Each and all of the Obligations shall survive the execution and delivery of the Security Documents and the consummation of the loan called for therein and shall continue in full force and effect until the Indebtedness shall have been paid in full.

    **12.2.**    **Further Assistance.** Grantor, upon the request of Trustee or Beneficiary, will execute, acknowledge, deliver and record and/or file such further instruments and do such further acts as may be necessary, desirable or proper to carry out more effectively the purposes of the Loan Documents, to subject to the liens and security interests thereof any property intended by the terms thereof to be covered thereby, including specifically, without limitation, any renewals, additions, substitutions, replacements or appurtenances to the Mortgaged Property, and to complete, execute, record and file any document or instrument necessary to place third parties on notice of the liens and security interest granted under the Security Documents.

    **12.3.**    **Recording and Filing.** Grantor will cause the Security Documents and all amendments and supplements thereto and substitutions therefore to be recorded, filed, re-recorded and refiled in such manner and in such places as Trustee or Beneficiary shall reasonably request and will pay all such recording, filing, recording and refiling taxes, fees and other charges.

    **12.4.**    **Notices.** All notices or other communications required or permitted to be given pursuant to this Deed of Trust shall be in writing and shall be considered as properly given if mailed by registered or certified United States mail, postage prepaid, or by delivering the same in person to the intended addressee or by prepaid telegram; provided, however, that notice regarding any proposed foreclosure sale shall be given pursuant to Paragraph 7.4.

    **12.5.**    **No Waiver.** Any failure by Trustee or Beneficiary to insist, or any election by Trustee or Beneficiary not to insist, upon strict performance by Grantor of any of the terms, provisions or conditions of the Security Documents shall not be

Deed of Trust, Security Agreement, Assignment
of Leases and Rents and Financing Statement

deemed to be a waiver of the same or of any other term, provisions or right at any time, from time to time thereafter, to insist upon strict performance by Grantor of any and all of such terms, provisions and conditions.

12.6.   **Beneficiary's Right to Pay Indebtedness and Pay Obligations.** If Maker, Grantor or any other party shall fail, refuse or neglect to make any required payment of the Indebtedness or perform any of the Obligations required by the Security Documents, then at any time thereafter and without notice or demand upon Maker, Grantor or any other party, and without waiving or releasing any other right, remedy or recourse Beneficiary may have because of the same, Beneficiary may (but shall not be obligated to) make such payment or perform such act for the account of and at the expense of Grantor and shall have the right to enter upon the Mortgaged Property for such purpose and to take all such action thereon with respect to the Mortgaged Property as it may deem necessary or appropriate. Grantor shall be obligated to repay Beneficiary for all sums advanced by it pursuant to this Paragraph 12.6 and shall indemnify and hold Beneficiary harmless from and against any and all loss, cost, expense, liability, damage and claims and causes of action, including reasonable attorneys' fees, incurred or accruing by any acts (except for such acts as would constitute willful misconduct of Beneficiary) performed by Beneficiary pursuant to the provisions of this Paragraph 12.6 or by reason of any other provision of the Security Documents. All sums paid by Beneficiary pursuant to this Paragraph 12.6 and all other sums extended by Beneficiary to which it shall be entitled to be indemnified, together with interest thereon at the maximum legal contract rate of interest that Beneficiary may charge Grantor from the date of such payment or expenditure shall constitute additions to the Indebtedness and Obligations, shall be secured by the Security Documents and shall be paid by Grantor to Beneficiary upon demand.

12.7.   **Covenants Running with the Land.** All obligations contained in the Security Documents are intended by the parties to be and shall be construed as covenants running with the Mortgaged Property.

12.8.   **Successors and Assigns.** All of the terms of the Security Documents shall apply to, be binding upon and inure to the benefit of the parties hereto, their respective successors, assigns, heirs and legal representatives and all other persons claiming by, through or under them.

12.9.   **Severability.** The Security Documents are intended to be performed in accordance with, and only to the extent permitted by, all applicable Legal Requirements. If any provision of any of the Security Documents or the application thereof to any person or circumstance shall, for any reason and to any extent, be invalid or unenforceable, neither the remainder of the instrument in which such provision is contained nor the application of such provision to other persons or circumstances or other instruments referred to hereinabove shall be affected thereby, but rather, the same shall be enforced to the greatest extent permitted by law.

12.10.   **Controlling Agreement.** All agreements between Grantor and Beneficiary, whether now existing or hereafter arising and whether written or oral, are hereby limited so that in no contingency, whether by reason of demand or acceleration of the maturity of the Note or otherwise, shall the interest contracted for, charged, received, paid or agreed to be paid to Beneficiary exceed the maximum amount permissible under applicable law. If, from any circumstance whatsoever, interest would otherwise be payable to Beneficiary in excess of the maximum lawful amount, the interest payable to Beneficiary shall be reduced to the maximum amount permitted under applicable law; and if from any circumstance Beneficiary shall ever receive anything of value deemed interest by applicable law in excess of the maximum lawful amount, an amount equal to any excessive interest shall be applied to the reduction of the principal of the Indebtedness and not to the payment of interest, or if such excessive interest exceeds the unpaid balance of principal of the Indebtedness, such excess shall be refunded to Grantor, Maker, or the other obligor(s) on the Indebtedness.

12.11.   **Entire Agreement and Modification.** The Security Documents contain the entire agreements between the parties relating to the subject matter hereof and thereof, and all prior agreements relative thereto which are not contained herein or therein are terminated. The Security Documents may be amended, revised, waived, discharged, released or terminated only by a written instrument or instruments executed by the party against which enforcement of the amendment, revision, waiver, discharge, release or termination is asserted. Any alleged amendment, revision, waiver, discharge, release or termination which is not so documented shall not be effective as to any party.

12.12.   **Counterparts.** This Deed of Trust may be executed in any number of counterparts, each of which shall be an original, but all of which together shall constitute but one instrument.

12.13.   **Applicable Law and Uniform Commercial Code.** The Security Documents shall be governed by and construed according to the laws of the State of Texas and the laws of the United States applicable to transactions in the State of Texas. All terms used herein which are defined in the Texas Business and Commerce Code shall be used with the definition therefore in said Code.

12.14.   **Headings and General Application.** The article, paragraph and subparagraph entitlements hereof are inserted for convenience of reference only and shall in no way effect, modify, or define, or be used in construing, the text of such

article, paragraph or subparagraph. If the text requires, words used in the singular shall be read as including the plural, and pronouns of any gender shall include all genders.

12.15.  **Sole Benefit.**  This Instrument and the other Security Documents have been executed for the sole benefit of Grantor, Maker, Guarantor and Beneficiary and the heirs, successors, assigns and legal representatives of Beneficiary. No other party shall have rights thereunder nor be entitled to assume that the parties thereto will insist upon strict performance of their mutual obligations hereunder, any of which may be waived from time to time. Grantor, Maker and Guarantor shall have no right to assign any of their rights under the Security Documents to any party whatsoever, including the right to receive advances under the Note or otherwise.

12.16.  **Subrogation.**  If any or all of the proceeds of the Indebtedness or the Obligations have been used to extinguish, extend or renew any Indebtedness heretofore existing against the Mortgaged Property or to satisfy any Indebtedness or obligation secured by a lien or encumbrance of any kind (including liens securing the payment of any Impositions); such proceeds have been advanced by Beneficiary at Grantor's request, and, to the extent of such funds so used, the Indebtedness and Obligations in this Deed of Trust shall be subrogated to and extend to all of the rights, claims, liens, titles and interests heretofore existing against the Mortgaged Property to secure the Indebtedness or obligation so extinguished, paid, extended or renewed, and the former rights, claims, liens, titles and interest, if any, shall not be waived but rather shall be continued in full force and effect and in favor of Beneficiary and shall be merged with the lien and security interest created herein as cumulative security for the repayment of the Indebtedness and satisfaction of the Obligations.

12.17.  **Business or Commercial Purpose; No Homestead.**  Grantor warrants that the extension of credit evidenced by the Note secured hereby is solely for business or commercial purposes, other than agricultural purposes. The Grantor further warrants that the credit transaction evidenced by the Note is specifically exempted under Regulation Z issued by the Board of Governors of the Federal Reserve System and Title I of the Consumer Credit Protection Act and that no disclosures are required to be given under such regulations and federal laws in connection with the above transaction. Grantor does not claim any part of the Mortgaged Property as residential or business homestead.

GRANTOR:

Meecham Hospitality, LLC

By: _____
Jagmohan S. Dhillon, Manager

STATE OF TEXAS                    §
                                  §
COUNTY OF  Tarrant                §

This instrument was acknowledged before me on the __2__ day of July, 2008, by Jagmohan S. Dhillon, as Manager of Meecham Hospitality, LLC, on behalf of such company.

[SEAL]

_____
Notary Public, State of Texas

Deed of Trust, Security Agreement, Assignment
of Leases and Rentals and Financing Statement

EXHIBIT "A"

Legal description will be attached by title company.



**EXHIBIT "A"**

Description of a 2.500 acre tract of land in the D. Odum Survey, Abstract 1184, and the City of Fort Worth, Tarrant County, Texas, said tract of land being a portion of land described by deeds recorded in Volume .11752, Page 190, Deed Records, Tarrant County, Texas, and Lot 6, Block 1, Mercantile Center West Addition, recorded in Cabinet A, Slide 11026, Plat Records, Tarrant County, Texas and being more particularly described as follows;

Beginning, at a 1/2 inch iron rod with "Pacheco Koch" cap set for corner at the Southwest end of a circular corner clip at the intersection of the West line of Gemini Place (a variable width right-of-way) and the North line of Meacham Boulevard (a 120 foot right-of-way);

Thence North 89 degrees 15 minutes 57 seconds West, along the said North line of Meacham Boulevard, a distance of 262.02 feet to a 1/2 inch iron rod with "Pacheco Koch" found for corner;

Thence North 00 degrees 43 minutes 39 seconds East departing the said North line of Meacham Boulevard, a distance of 379.12 feet to a 1/2 inch iron rod with "Pacheco Koch" cap found for corner;

Thence South 89 degrees 19 minutes 26 seconds East passing at a distance of 46.89 feet to the Southwest corner of Lot 5, Block 1, Mercantile Center West Addition, an addition to the City of Fort Worth, Texas, according to a plat recorded in Cabinet B, Slide 2208, of the Plat Records of Tarrant County, Texas, continuing a total distance of 283.24 feet to a 1/2 inch iron rod the "Pacheco Koch" cap found for corner in the said West line of Gemini Place; said point being the beginning of a non-tangent curve of the left;

Thence along the said West line of Gemini Place, the following six (6) calls:

Southerly along said curve to the left, having a central angle of 03 degrees 00 minutes 00 seconds, a radius of 490.00 feet, a chord bearing a distance of South 02 degrees 26 minutes 16 seconds West 24.36 feet, an arc distance of 24.40 feet to a 5/8 inch iron rod found for corner at the end of said curve;

South 00 degrees 44 minutes 03 seconds West, a distance of 73.48 feet to a 5/8 inch iron rod with "Brooke Baker" cap found for corner; said point being the beginning of a tangent curve to the right;

Southerly along said curve to the right, having a central angle of 07 degrees 00 minutes 00 seconds, a radius of 740.00 feet, a chord bearing and distance of South 04 degrees 04 minutes 12 seconds West 89.55 feet an arc distance of 89.60 feet to a 5/8 inch iron rod found for corner at the end of said curve; said point being the beginning of a reverse curve to left;

Southerly along said curve to the left, having a central angle of 07 degrees 00 minutes 00 seconds, a radius of 760.00 feet, a chord bearing and distance of South 04 degrees 05 minutes 30 seconds West 91.84 feet an arc distance of 91.9 feet to a 5/8 inch iron rod found for corner at the end of said curve;

South 00 degrees 36 minutes 52 seconds West a distance of 80.31 feet to a 1/2 inch iron rod with "Pacheco Koch" cap found for corner; said point being the beginning of a tangent curve to the right;

Southwesterly along the said circular curve clip and said curve to the right, having a central angle of 90 degrees 00 minutes 00 seconds, a radius of 20.0 feet a chord bearing and distance of South 45 degrees 36 minutes 49 seconds West 28.31 feet, an arc distance of 31.46 feet to the point of beginning;

Containing 108,900 square feet or 2.500 acres of land.

NOTE: COMPANY DOES NOT REPRESENT THAT THE ABOVE ACREAGE AND/OR SQUARE FOOTAGE CALCULATIONS ARE CORRECT.