# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF TEXAS
### FORT WORTH DIVISION

IN RE:                                    §
                                          §
**MEECHAM HOSPITALITY, LLC,**             §
                                          §    **CASE NO. 12-40594-rfn-11**
                                          §         **Chapter 11**
                                          §
**DEBTOR.**                               §

## SECOND AMENDED PLAN OF REORGANIZATION DATED JUNE 20, 2012

MEECHAM Hospitality, LLC ("MEECHAM") proposes the following Second Amended Plan of Reorganization ("Plan") Dated June 20, 2012 pursuant to Chapter 11 of the United States Bankruptcy Code on behalf of the MEECHAM. MEECHAM's profitability to fund the Plan is based on the amount of money that it will earn. MEECHAM will file periodic financial reports with the Court as required by the Code covering its profitability, projections of cash receipts and disbursements for a reasonable period and a comparison of actual cash receipts and disbursements with projections in prior reports. These reports shall be available on the Court's PACER site at www.txnb.uscourts.gov using MEECHAM's name and/or case number as referenced above.

## TABLE OF CONTENTS

ARTICLE I - DEFINITIONS AND USE OF TERMS ..................................................... 3

ARTICLE II - CONCEPT OF THE PLAN ................................................................... 7

ARTICLE III - GENERAL TERMS AND CONDITIONS ................................................. 7

ARTICLE IV - DESIGNATION OF CLASSES OF CLAIMS AND INTERESTS ............ 7

ARTICLE V - PROVISIONS FOR SATISFACTION OF CLAIMS AND INTERESTS…8

ARTICLE VI - MEANS FOR IMPLEMENTATION OF PLAN ....................................... 17

ARTICLE VII - TREATMENT OF EXECUTORY CONTRACTS AND
    UNEXPIRED LEASES ................................................................................................ 18

ARTICLE VIII - ENFORCEMENT, SETTLEMENT, OR ADJUSTMENT OF CLAIMS... 18

ARTICLE IX - EFFECT OF CONFIRMATION ............................................................... 19

ARTICLE X - MISCELLANEOUS PROVISIONS ....................................................... 20

ARTICLE XI - MODIFICATION OF THE PLAN ........................................................ 22

ARTICLE XII - RETENTION OF JURISDICTION ......................................................... 22

# ARTICLE I
## <u>DEFINITIONS AND USE OF TERMS</u>

**1.01    <u>Defined Terms.</u>** Unless the context otherwise requires, capitalized terms shall have the meanings set forth in this section 1.01.

**1.01.01 <u>Administrative Claim or Expense</u>** means an administrative expense or Claim described in Section 503 of the Bankruptcy Code and entitled to administrative priority pursuant to Section 507(a)(1) of the Bankruptcy Code, including, but not limited to, Claims for compensation of professionals made pursuant to Sections 330 and 331 of the Bankruptcy Code, and all fees and charges assessed against MEECHAM  and its property under 28 U.S.C. Section 1930.

**1.01.02 <u>Administrative Tax Claim</u>** means an Unsecured Claim by any governmental unit for taxes (including interest or penalties related to such taxes) for any tax year or period, all or a portion of which occurs or falls within the period from and including the Petition Date through the Effective Date.

**1.01.03 <u>Allowed Claim</u>** means a Claim against MEECHAM allowable under the Bankruptcy Code to the extent that (i) a proof of Claim, proof of Interest, or request for payment was timely Filed or, with leave of the Bankruptcy Court, late Filed, and as to which no objection has been timely Filed or, if Filed, is allowed by a Final Order, unless otherwise provided in this Plan or (ii) the Claim is scheduled and not listed as disputed, contingent, or unliquidated, and to which no objection has been timely Filed or, if Filed, is allowed by a Final Order or (iii) a Claim allowed pursuant to this Plan.

**1.01.04 <u>Allowed Secured Claim</u>** means any Allowed Claim secured by a lien, security interest, or other charge or interest in property in which MEECHAM  has an interest, to the extent of the value thereof (determined in accordance with Bankruptcy Code Section 506(a)).

**1.01.05 <u>Bankruptcy Code or Code</u>** means the United States Bankruptcy Code, Title 11 of the United States Code Section 101 et <u>seq.</u>, as amended.

**1.01.06 <u>Bankruptcy Court</u>** means the United States Bankruptcy Court for the Northern District of Texas, or such other court that may have jurisdiction with respect to the reorganization of MEECHAM  pursuant to Chapter 11 of the Bankruptcy Code.

**1.01.07 <u>Bankruptcy Rule</u>** means the Federal Rules of Bankruptcy Procedure.

**1.01.08 <u>Bar Date</u>** means subsequent to which a proof of pre-petition Claim may not timely be Filed or the date by which proofs of claims held by governmental agencies must be filed.

**1.01.09 <u>Case</u>** means this Chapter 11 Bankruptcy Case in the Bankruptcy Court.

**1.01.10 <u>Claim</u>** shall have the meaning set forth in Bankruptcy Code Section 101(5).

**1.01.11 <u>Claimant</u>** means any person or entity having or asserting a Claim in the case.

**1.01.12** <u>**Class**</u> **or** <u>**Classes**</u> mean all of the holders of Claims or Interests that MEECHAM has designated pursuant to Section 1123(a)(1) of the Bankruptcy Code as having substantially similar characteristics as described in Article IV of this Plan.

**1.01.13** <u>**Confirmation**</u> means the entry by the Bankruptcy Court of a Confirmation Order confirming this Plan.

**1.01.14** <u>**Confirmation Date**</u> means the date on which the Confirmation Order is entered.

**1.01.15** <u>**Confirmation Hearing**</u> means the hearing or hearings held before the Bankruptcy Court in which the MEECHAM will seek Confirmation of this Plan.

**1.01.16** <u>**Confirmation Order**</u> means the Order of the Court confirming this Plan under Section 1129 of the Bankruptcy Code.

**1.01.17** <u>**Contested**</u> when used with respect to a Claim, means a Claim against MEECHAM (a) if no Proof of Claim was filed, a claim that is listed in MEECHAM 's Schedules of Assets and Liabilities as disputed, contingent, or unliquidated and that is not allowed pursuant to this Plan; (b) a claim that is the subject of a pending action in a forum other than the Bankruptcy Court unless such Claim has been determined by Final Order in such other forum and Allowed by Final Order of the Bankruptcy Court; or (c) if a Proof of Claim was filed, a claim as to which an objection has been or may be timely filed and has not been denied by Final Order. To the extent an objection relates to the allowance of only a part of a Claim, such Claim shall be a Contested Claim only to the extent of the objection.

**1.01.18** <u>**Creditor**</u> shall have the meaning specified by Section 101(9) of the Code.

**1.01.19** <u>**Disputed Claim**</u> means any Claim that is not an Allowed Claim.

**1.01.20** <u>**Effective Date**</u> means the later of the first business day that is fourteen days after the Confirmation Date.

**1.01.21** <u>**Estate**</u> means the estate created pursuant to Bankruptcy Code Section 541 with respect to MEECHAM .

**1.01.22** <u>**Fee Claim**</u> means a Claim under Bankruptcy Code Sections 330 or 503 for allowance of compensation and reimbursement of expenses to professionals in the MEECHAM Chapter 11 case.

**1.01.23** <u>**Filed**</u> means delivered to the Clerk of the Bankruptcy Court.

**1.01.24** <u>**Final Order**</u> means an order or judgment of a court of competent jurisdiction that has been entered on the docket maintained by the clerk of such court and has not been reversed, vacated or stayed and as to which (a) the time to appeal, petition *for petition for certiorari,* or move for a stay, new trial, reargument, or rehearing has expired and as to which no appeal, petition for *certiorari* or other proceedings for a stay, new trial, reargument or rehearing shall then be pending or (b) if an appeal, writ of *certiorari,* stay, new trial, reargument or rehearing thereof has been sought, (i) such

order or judgment shall have been affirmed by the highest court to which such order was appealed, *certiorari* shall have been denied or a stay, new trial, reargument or rehearing shall have been denied or resulted in no modification of such order and (ii) the time to take any further appeal, petition for *certiorari,* or move for a stay, new trial, reargument or rehearing shall have expired; *provided, however,* that no order or judgment shall fail to be a "Final Order" solely because of the possibility that a motion pursuant to section 502(j) or 1144 of the Bankruptcy Code or under Rule 60 of the Federal Rules of Civil Procedure, or Bankruptcy Rule 9024 has been or may be filed with respect to such order or judgment.

**1.01.25 General Unsecured Claim** means Unsecured Claim that is not entitled to priority under Section 507(a) of the Bankruptcy Code.

**1.01.26 HHFI** means Holiday Hospitality Franchising, Inc.

**1.01.27 Impaired** means the treatment of an Allowed Claim pursuant to the Plan <u>unless,</u> with respect to such Claim, either (i) the Plan leaves unaltered the legal, equitable and contractual rights to which such Claim entitles the holder of such Claim, or (ii) notwithstanding any contractual provision or applicable law that entitles the holder of such Claim to demand or receive accelerated payment of such Claim after occurrence of a default, MEECHAM  (A) cures any default that occurred before or after the commencement of the Chapter 11 Case on the Petition Date, other than default of the kind specified in Section 365(b)(2) of the Bankruptcy Code; (B) reinstates the maturity of such Claim as such maturity existed before such default; (C) compensates the holder of such Claim for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision or such applicable law; and (D) does not otherwise alter the legal, equitable or contractual rights to which such Claim entitles the holder of such Claim; or (iii) the Plan provides that on the Effective Date, the holder of such Claim receives, on account of such Claim, cash equal to the Allowed Amount of such Claim.

**1.01.28 MEECHAM** shall mean, prior to the Confirmation Date, MEECHAM, the debtor and debtor-in-possession in the Case, and shall mean, effective upon and after the Confirmation Date, MEECHAM , as it exists as a reorganized debtor governed by the Plan and with the rights, obligations and duties set forth in the Plan.

**1.01.29 License Agreement** means that certain Holiday Inn® Hotel Change of Ownership License Agreement dated August 1, 2008 (as same may have been amended) between the Debtor and HHFI that permits the Debtor to operate a Holiday Inn® Hotel.

**1.01.30 Petition Date** means February 2, 2012, the date MEECHAM's petition was filed commencing this bankruptcy case.

**1.01.31 Plan** means this Plan of Reorganization, as it may be amended or modified from time to time as permitted herein and by the Bankruptcy Court.

**1.01.32 Pre-petition** means prior to the Petition Date.

**1.01.33 Priority Tax Claim** means a Claim entitled to priority pursuant to Bankruptcy Code Section 507(a)(8).

**1.01.34 Pro Rata** means proportionately, based on the percentage that the amount of an Allowed Claim within a particular Class bears to the aggregate amount of all Allowed Claims in such Class.

**1.01.35 Property of the Estate** means all property in which MEECHAM or its bankruptcy Estate holds a legal or an equitable interest, including all property described in Bankruptcy Code Section 541. MEECHAM shall remain in possession of all property of the Estate unless provided for otherwise in the Plan or Confirmation Order.

**1.01.36 Rejection Claim** means any Claim arising pursuant to Bankruptcy Code Section 502(g) by reason of rejection by MEECHAM of an executory contract or unexpired lease pursuant to Bankruptcy Code Sections 365 or 1123(b)(2).

**1.01.37 Secured Claim** means any Claim secured by a lien, security interest, or other charge or interest in property in which MEECHAM or the Estate has an interest, to the extent of the value thereof (determined in accordance with Bankruptcy Code Section 506(a)).

**1.01.38 Secured Tax Claim** means any Tax Claim which is secured by real or personal property.

**1.01.39 Secured Creditor or Secured Claimant** means any Claimant holding a Secured Claim.

**1.01.40 Unimpaired** means not Impaired.

**1.01.41 Unsecured Claim** means any Claim not collateralized (or the extent not fully collateralized) by assets of MEECHAM.

**1.01.42 Unsecured Claimants or Unsecured Creditors** means any holder of an Unsecured Claim.

**1.01.43 Voidable Transfer** means all transfers voidable under Sections 544, 545, 547, 548, 549 and/or 550 of the Code or any other state or federal transfer.

**1.02 Number and Gender of Words.** Whenever the singular number is used, it shall include the plural, and the plural shall include the singular, as appropriate to the context. Words of any gender shall include each other gender where appropriate.

**1.03 Terms Defined in the Bankruptcy Code**. Capitalized terms not specifically defined in section 1.01 of the Plan shall have the definitions given those terms, if applicable, in the Bankruptcy Code.

**1.04 Headings.** The headings and captions used in this Plan are for convenience only and shall not be deemed to limit, amplify or modify the terms of this Plan nor affect the meaning thereof.

**1.05 Time Computation.** In computing any period of time prescribed herein, the provisions of Federal Rule of Bankruptcy Procedure Rule 9006(a) shall apply.

## ARTICLE II
## CONCEPT OF THE PLAN

**2.01    Generally**. The Plan is a plan of reorganization. MEECHAM shall continue its business after the Effective Date.  MEECHAM's primary business is owning and operating a hotel in Fort Worth, Texas doing business as a Holiday Inn. MEECHAM's business operations will provide the income and means for implementation of this Plan and are set forth in more detail in the accompanying Disclosure Statement.

## ARTICLE III
## GENERAL TERMS AND CONDITIONS

**3.01    Treatment of Claims.** This Plan is intended to resolve all Claims against MEECHAM and/or property of MEECHAM of whatever character, whether contingent or liquidated, or whether allowed by the Bankruptcy Court pursuant to Bankruptcy Code Section 502(a). However, only Allowed Claims will receive payments afforded by the Plan. The Plan is designed to insure that Claimants shall receive at least as much pursuant to this Plan as they would receive in a liquidation pursuant to Chapter 7 of the Bankruptcy Code.

**3.02    Time for Filing Claims.** The holder of any Administrative Claim other than (i) a Fee Claim, (ii) a liability incurred and paid in the ordinary course of business by MEECHAM, or (iii) an Allowed Administrative Claim, must file with the Bankruptcy Court and serve on MEECHAM and its respective counsel, notice of such Administrative Claim within thirty (30) days after the Effective Date. At a minimum, such notice must identify (i) the name of the holder of such Claim, (ii) the amount of such Claim, and (iii) the basis of such Claim. Failure to file this notice timely and properly shall result in the Administrative Claim being forever barred and discharged.

Each Person asserting an Administrative Expense that is a Fee Claim incurred before the Effective Date shall be required to file with the Bankruptcy Court, and serve on MEECHAM's counsel and the U. S. Trustee, a Fee Application within sixty (60) days after the Effective Date.

A person who is found to have received a voidable transfer shall have thirty (30) days following the date upon which the order ruling that such transfer is avoidable becomes a Final Order in which to file a Claim in the amount of such avoided transfer.

Liabilities incurred from the Petition Date through the Effective Date in the ordinary course of business shall be paid in the ordinary course of business by MEECHAM.

## ARTICLE IV
## DESIGNATION OF CLASSES OF CLAIMS AND INTERESTS

MEECHAM designates the following Classes of Claims and Interests pursuant to Bankruptcy Code Section 1123. MEECHAM shall pay all fees assessed by the Office of the United States Trustee until this Case is closed by the Court or MEECHAM is otherwise released from such obligations by the Court.

**4.01    Class 1** consists of any Allowed Administrative Claims.

**4.02**   **Class 2** consists of any Allowed Secured Tax Creditor Claims

(including ad valorem tax claims).

**4.03**   **Class 3** consists of any Allowed Priority Creditor Claims.

**4.04**   **Class 4** consists of Allowed Secured Claim of City Bank Texas.

**4.05**   **Class 5** consists of Allowed Secured Claim of Joginder Soni.

**4.06**   **Class 6** consists of Allowed Secured Claim of Maluk Dhami.

**4.07**   **Class 7** consists of Allowed Secured Claim of Premium Hotel Management.

**4.08**   **Class 8** consists of Allowed Claim of Texas State Comptroller.

**4.09**   **Class 9** consists of the Allowed General Unsecured Claims.

**4.10**   **Class 10** consists of MEECHAM Equity Interest Holders.


## ARTICLE V
## PROVISIONS FOR SATISFACTION OF CLAIMS AND INTERESTS

The Claims and Interests classified in Article IV hereof shall be treated in the manner set forth in this Article V.

**Class 1 Claims**.   The Class 1 Claims are estimated to be $50,000. The Allowed amount of Class 1 Claims will be paid once Allowed in full by MEECHAM and on or before the Effective Date. These claims are priority claims pursuant to Section 507(a)(1) of the Bankruptcy Code. These claims include claims for MEECHAM'S attorney's fees and U.S. Trustee's fees. U.S. Trustee's fees must be paid until the case is closed. MEECHAM must file quarterly reports following confirmation and until the case is closed. The Class 1 Claims may agree to a different treatment which will be set forth in writing.   Payment of post-petition franchise fees to HHFI shall continue to be paid in the ordinary course. HHFI is not required to file a request for payment of administrative expenses, as the requirement for Debtor to make all such payments in the ordinary course is incorporated into this Plan.

**Class 2 Claims**.   The estimated amount of Class 2 Claims are based on tax years prior to the Petition Date. The claims against Debtor and its property for past due ad valorem taxes for years prior to tax year 2012 shall be paid over 60 months from the Confirmation Date. These creditors shall retain their liens to secure their claims until paid in full under this Plan. The Class 2 Claims shall be paid interest from the Petition Date at the rate of 1% per month from the Petition Date through the Effective Date of the Plan and 12% per annum following the Effective Date until paid in full. In the event that MEECHAM disputes such claim, the payments will be applied to the undisputed amount of the claim as ultimately allowed. While resolution of any such objection is pending, payments pursuant to the Plan shall be applied to the undisputed portion of the claim as ultimately allowed. In the event of a default

Page 8

under the plan, counsel for holder of a claim in this class shall provide notice of the default via facsimile to counsel for MEECHAM. Such default must be cured by MEECHAM within 10 business days of the date of transmission of such notice of default. In the event the default is not cured, the Class 2 Claimants shall be entitled to pursue all amounts owed pursuant to state law outside of the Bankruptcy Court. The Class 2 Claimants shall only be required to provide two notices of default. Upon a third event of default, (i) the Class 2 Claimants shall be entitled to collect all amounts owed pursuant to state law outside of the Bankruptcy Court without further notice. Failure to pay post-petition taxes prior to delinquency shall constitute an event of default. These claims are secured claims.

The Class 2 Claims are Impaired and the holders of the Class 2 Claims are entitled to vote to accept or reject the Plan.

**Class 3 Claims**.  The Class 3 Claims will be paid once Allowed over five (5) years from the Effective Date with interest on such amounts at the rate of 3% per annum until paid in full. These claims will be paid in equal monthly payments over 60 months, beginning on the 15th day of the first month after the Effective Date.

The Class 3 Claims and the holders of the Class 3 Claims are entitled to vote to accept or reject the Plan.

**Class 4 Claim**.  The Allowed Secured Claim of City Bank Texas.

a.  The Class 4 Claim is an Allowed Secured Claim and shall be based on $10,400,000.00 as its Allowed Secured Claim. The Debtor shall make a $500,000.00 claim reduction on the Effective Date from two sources:  $250,000.00 new money from the Debtor's principal and $250,000.00 from the DIP account funds. After the $500,000.00 payment the remaining Allowed Secured Claim amount shall be treated as follows ("Reduced Allowed Secured Claim"). The balance of the DIP account funds shall be retained in an interest bearing account to fund: a) payments to City Bank called for by this Plan; b) operating expenses of the property or c) ad valorem real property taxes.  The Reduced Allowed Secured Claim shall be structured into to two notes as follows:  a) A first note ("Note A") in the amount of $9,200,000.00 payable on a 30 year amortization over 4 years from the Effective Date with interest thereon for years one and two at the rate of 4% per annum and for years three and four at the rate of 5% per annum and b) A second note ("Note B") in the amount of $700,000.00 interest only from the Effective Date and for the four years of the note term at the rate of 4% per annum, all principal and interest to be paid in full at the maturity in four years. As called for herein principal and interest shall be due and payable monthly in equal monthly payments on the first day of the month and shall continue on the first day of each month thereafter until paid in full. The full balance shall be due 48 months following the Effective Date. Taxes for the current year shall be escrowed in a tax escrow account on a monthly basis starting on the Effective Date and shall be paid along with the mortgage payment at the rate of 1/12 per month.

b.  City Bank Texas shall be secured for an Allowed Secured Claim on MEECHAM ("Debtor") real and personal property described in its loan documents and financing statements (the "Collateral"), in the amount of approximately $10,400,000.00 as of Confirmation Date.

This amount does not take into consideration the adequate protection payments made to City Bank during the Chapter 11 case which shall reduce the amount of the proposed second note ("Note B"). Any unsecured claim of City Bank Texas shall be treated in Class 9 of the Plan.

c. Notes A and B shall be secured by a first lien on the Property. The security interest and liens granted to City Bank Texas under the Plan and Order Confirming Plan shall constitute valid and duly perfected security interests and liens, and either the Order Confirming Plan or the Plan shall be sufficient and conclusive evidence of the priority, perfection and validity of all of the security interests and liens upon the collateral granted to City Bank Texas hereunder, and City Bank Texas shall not be required to file, record or serve any financing statements, mortgages, notice or other documents which may otherwise be required under federal or state law in any jurisdiction or to take any other action (including the taking of possession) to validate or perfect such post-petition security interest and liens. If City Bank Texas shall, in its discretion, elect for any reason to file any such financing statements, mortgages, notices or other documents with respect to such security interests and liens, or take any other action to evidence or perfect same, the Debtor is authorized and required to, or cause to be executed, all such financing statements, deeds of trust, notices or other documents upon City Bank Texas's request. City Bank Texas may, in its discretion, file a copy of either the Order Confirming Plan or the Plan in any filing or recording office in any jurisdiction in which the Debtor may have an interest in property and, in such event, the subject filing or recording officer is authorized and directed to file or record such certified copy of either the Order Confirming Plan or the Plan in accordance with applicable law.

d. The unmodified terms of the City Bank Texas pre-Petition Date loan documents are not modified by the Plan or Confirmation Order unless specifically stated in the Plan, and the Debtor is obligated thereunder, such that the City Bank Texas pre-Petition Date loan documents are enforceable against the Debtor except as specifically stated herein, and in the event of a default by Debtor in its obligations to City Bank Texas under the Plan, will be fully enforceable. If requested by City Bank Texas, Debtor shall execute all necessary loan and related documents with the terms stated in this Plan.

e. If the Debtor fails to make any of the payments to City Bank Texas described herein, City Bank Texas may provide the Debtor with written notice of such default, which notice may be emailed to Debtor's counsel.  The Debtor shall have 20 business days to cure such default. In the event the default is not cured, the automatic stay shall be modified to permit City Bank Texas to post foreclosure notices and to foreclose on its liens and security interests in the Debtor's property.  City Bank Texas shall only be required to provide two notices of default a year.  Upon a third event of default, the automatic stay shall be modified to permit City Bank Texas to post foreclosure notices and to foreclose on its liens and security interests in the Debtor's property without further notice.

f.    A third party shall manage the Property for at least 1 year following the entry of the Order Employing the Third Party Management Company. Provided there is no event of default at the end of such period then the Reorganized Debtor may select its own management company. In the event there is any default during the Plan Term, upon 30 days notice to the Reorganized Debtor, City Bank may demand that third party management step into the management of the Property for the remaining term of the Plan.

g.    The Debtor shall place a Deed in Lieu of Foreclosure into escrow with City Bank Texas on the Effective Date. City Bank Texas may record such Deed in the event that the Debtor defaults under the terms of this Plan and fails to cure such default within the time permitted under this Plan or the applicable loan documents.

h.    Should this Section of the Plan for treatment of City Bank Texas's Claim contradict any other provision in the Plan, the provisions of this Section shall control.

i.    Existing Guarantors may be required to execute new or continuing guarantees at the request of City Bank Texas reflecting their continued obligations to City Bank Texas being modified by this Plan.

j.    Revised loan documents to reflect the terms of the revised plan shall be submitted by City Bank five days prior to the ballot deadline.

k.    Section 1111(b) is sometimes regarded as one of the more recondite sections of the Federal Bankruptcy Code. Section 1111(b) reads as follows:

l.    (b)(1)(A) A claim secured by a lien on property of the estate shall be allowed or disallowed under section 502 of this title the same as if the holder of such claim had recourse against the debtor on account of such claim, whether or not such holder has such recourse, unless –

(i) the class of which such claim is a part elects, by at least two-thirds in amount and more than half in number of allowed claims of such class, application of paragraph (2) of this subsection; or

(ii) such holder does not have such recourse and such property is sold under section 363 of this title or is to be sold under the plan.

(B) A class of claims may not elect application of paragraph (2) of this subsection if –

(i) the interest on account of such claims of the holders of such claims in such property is of inconsequential value; or

(ii) the holder of a claim of such class has recourse against the debtor on account
of such claim and such property is sold under section 363 of this title or is to be
sold under the plan.
(2) If such an election is made, then notwithstanding section 506(a) of
this title, such claim is a secured claim to the extent that such claim is
allowed.

Section 1111(b)(1)(A) establishes a general rule that the holder of a secured claim in a
chapter 11 case shall have recourse against the debtor for the amount of the claim, even if the
holder would *not* have a recourse claim outside of a chapter 11 case. The purpose behind the
enactment of section 1111(b) was to protect the rights of non-recourse lienholders in Chapter 11
reorganizations." By way of illustration, a secured creditor who waives recourse against its
borrower, and who agrees to look only to its collateral for recovery, is still nevertheless given a
statutory recourse claim against the borrower if the borrower becomes a chapter 11 debtor. This
means that an undersecured creditor acquires a statutory deficiency claim against the chapter 11
debtor, even if that creditor would otherwise have no such claim. The statute also assures that if
the holder already has a recourse claim, that claim is preserved. Another way of summarizing the
statute is to say it either preserves *or* confers a deficiency claim, thus assuring that the
undersecured creditor will have such a claim.

### Exceptions to the Statutory Recourse Claim

#### 1. Exception: Property Is Not Retained

However, section 1111(b)(1)(A) establishes two exceptions to the general rule conferring
a statutory recourse claim. The easer exception to understand is the second one mentioned in the
statute, namely: if the secured claim holder does not have recourse (that is, has no recourse
outside of Chapter 11), *and* the property is sold under section 363 or is sold under the plan, then
there is no statutory recourse (i.e., deficiency) claim. That means that the statutory recourse
claim applies, if at all, *only* if the chapter 11 debtor retains the property under a chapter 11 plan.

#### 2. Exception: The §1111(b) Election Is Made

There is a second exception to the statutory recourse claim, and its exception is contained
in section 1111(b)(1)(A)(i). In essence, this second exception is that the *class* of claims of which
the claim having statutory recourse is a part *may* elect to have the claim treated as secured to the
extent that the claim is allowed. There are two limitations, or exceptions, governing when the Section 1111(b)
Election can *not* be made. The first limitation is when the lien is of "inconsequential value."
Such an election makes no sense if the lien has no value or very little value; indeed, without this
limitation, the election would gratuitously confer secured creditor status upon an unsecured
creditor. It should be noted, however, that as long as there is *some* value to the lien, even if it is
so inconsequential that the Section 1111(b) election is unavailable, the statutory unsecured
recourse claim is still available because it operates in the absence of the election. The second
limitation on the Section 1111(b) election is that the election is *not* available if the holder has
recourse against the debtor, *and* the property (i.e., the collateral) is sold under the chapter 11 plan
or under section 363 of the Code. The second limitation also follows from the nature of the
election, which is that the creditor's entire claim is treated as secured *if* the debtor keeps the

property *and* the creditor waives any deficiency claim. But this second limitation assumes that the debtor is *not* keeping the property and, further, that the creditor *does* have a recourse (or deficiency) claim. In those circumstances, which are the precisely opposite of those on which the availability election is predicated, it makes sense for the Election not to be available.

## SIGNIFICANCE OF THE SECTION 1111(b) ELECTION

The Election requires that, even though any recourse (deficiency) claim against the estate is waived, the claimant's entire claim, to the extent it is allowed, must be treated as a secured claim under a Chapter 11 plan. Section 1111(b)(2) provides: "[i]f such an election is made, then notwithstanding Section 506(a) of this title, such claim is a secured claim to the extent that such claim is allowed". Conversely, if no election is made, the claim remains bifurcated into secured and unsecured portions, the deficiency portion being, of course, unsecured.

### 1. Significance of the Election: Treatment of Claims Under § 1129

The significance of the election, however, appears nowhere in Section 1111. Its significance lies in the provisions of §1129(b), which prescribe the minimum treatment that a secured claim must receive if a Chapter 11 plan is to be confirmed, where the plan has not been accepted by the class to which that secured claim belongs. Thus, while the Section 1111(b) election is sometimes summarized as the waiver of a deficiency claim, it is more helpful to think of it as electing the plan treatment required by section 1129(b)(2)(A).

Section 1129(b)(1) requires confirmation of a plan if all conditions for plan confirmation are satisfied, other than voting acceptance, provided "the plan does not discriminate unfairly and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan." Section 1129(b)(2), in turn, defines "fair and equitable" as:

> (A) with respect to a class of secured claims, the plan provides -- (i)(I) that the holders of such claims retain the liens securing such claims, whether the property subject to such liens is retained by the debtor or transferred to another entity, to the extent of the allowed amount of such claims; and

> (II) that each holder of a claim of such class receive on account of such claim deferred cash payments totaling at least the allowed amount of such claim, of a value, as of the effective date of the plan, of at least the value of such holder's interest in the estate's interest in such property;

> (ii) for the sale, subject to section 363(k) of this title, of any property that is subject to the liens securing such claims, free and clear of such liens, with such liens to attach to the proceeds of such sale, and the treatment of such liens on proceeds under clause (i) or (iii) of this subparagraph; or

> (iii) for the realization by such holders of the indubitable equivalent of such claims.

Page 13

In sum, subsection (A)(i) assures that if the property securing a claim is retained, then the claimant will receive deferred cash payments that both total the allowed amount of the claim and have a value on the effective date of the plan at least equal to the value of the claimant's lien. For example, if the creditor has an allowed claim of $1000 secured by collateral having a value of $700, the claimant must receive payments that aggregate $1000 over time and have a present value of at least $700.

Subsection (A)(iii) has the possibility of providing the "indubitable equivalent of such claim" in lieu of the cash payments prescribed in subsection (A)(i). 680 Fifth Ave. Assocs. v. Mut. Benefit Life Ins. Co. (In re 680 Fifth Ave. Assocs.), 156 B.R. 726, 733 (Bankr. S.D.N.Y.), aff'd, 169 B.R. 22 (S.D.N.Y. 1993), aff'd, 29 F.3d 95 (2d Cir. 1994). Moreover, if a Section 1111(b)(2) election is made, Section 1129(a)(7)(B) requires that "property" be furnished. Section 1129(a)(7) provides as follows:

> (B) if section 1111(b)(2) of this title applies to the claims of such class, each holder of a claim of such class will receive or retain under the plan on account of such claim property of a value, as of the effective date of the plan, that is not less than the value of such holder's interest in the estate's interest in the property that secures such claims.

It has been held that when a creditor makes the Section 1111(b) election, it may not vote on the plan. The rationale seems to be that upon receiving section 1129(b) treatment, the claim is no longer considered impaired. Such rationale is questionable. However, the loss of voting rights does not make the creditor exercising the Section 1111(b) election powerless to influence the plan. Confirmation of a plan requires that "the plan complies with all applicable provisions of this title". Accordingly, the electing creditor has the opportunity to be heard at the plan confirmation hearing concerning whether the deferred cash value of payments equals the present value of the collateral (*i.e.*, litigate the discount rate) as well as to contest the debtor's ability to make the payment (*i.e.*, litigate plan feasibility).

## 2.  Significance of Not Electing: Treatment of Claims Under § 1129

In the absence of the Section 1111(b) election, the undersecured creditor could be at risk. The following paraphrases and condenses a hypothetical example:

> A debtor partnership owns real property encumbered by a $5 million first mortgage, a $3 million second mortgage and a $2 million third mortgage. The court values the property at $7.5 million. As a result, a plan is confirmed assuming the first mortgage, trimming the second mortgage to $2.5 million and cancelling the claim on the third mortgage. Post-confirmation, the Debtor sells the Property for more than $7.5 million and keeps all proceeds in excess of $7.5 million.

7 Collier on Bankruptcy ¶ 1111.03[i][a] (15th ed. rev. 2005).

In the instant case the pertinent facts can be summarized as follows:

Class 4   City Bank Secured Claim  $10,400,000.00

Class 9   City Bank Unsecured Claim $2,097,847.56

These claims are based on the following assumptions: Total Claim Amount $12,497,847.56 and value of the collateral $10,400,000. The current Plan proposes to pay the Allowed Secured Claim $46,255.00 a month based on a 30 year amortization and a 4% per annum interest rate for years 1 and 2 and $51,720.00 a month for years 3 and 4.  Assuming that this period and rate are approved the total paid to City Bank over the next 48 months is roughly $$2,351,400. The balloon payment on the Allowed Secured Claim amount in 48 months would be $ 9,239,618.

Assuming a Section 1111(b) election, the total monthly payments would be $2,351,400. Such payments would then be subtracted from the Allowed Claim Amount of $12,497,847.56 leaving an unpaid balance in 48 months of $$10,146,447.

The Class 4 Claim is Impaired and the holder of the Class 4 Claim is entitled to vote to accept or reject the Plan.

**Class 5 Claim**.  The Class 5 Claim will be paid in Class 9 as an unsecured creditor.

The Class 5 Claim is Impaired and the holder of the Class 5 Claim is entitled to vote to accept or reject the Plan.

**Class 6 Claim**.  The Class 6 Claim will be paid once Allowed over 60 months. The payments shall be made in equal monthly payments of principal and interest at the rate of 3% per annum on the first day of the month following the Effective Date and shall continue on the first day of each month thereafter until paid as called for by this Plan. The Class 6 Claims shall retain its lien under the Plan until paid in full.

The Class 6 Claim is Impaired and the holder of the Class 6 Claim is entitled to vote to accept or reject the Plan.

**Class 7 Claim**.   The Class 7 Claim will be treated in Class 9 of the Plan as an unsecured creditor.

The Class 7 Claim is Impaired and the holder of the Class 7 Claim is entitled to vote to accept or reject the Plan.

**Class 8 Claims**.  The Class 8 Claims will be paid once Allowed as follows: These Claims will be paid in equal monthly payments over five (5) years from the Petition Date with interest on such amounts at the rate of 4.25% per annum from the Effective Date until paid in full. Nothing in this Plan shall prevent the Class 8 Claimant from setting off amounts that may be due and owing to a Class 8 Claimant.  Any provision in this Plan that would be construed as preventing a set-off is void and of no effect as to a Class 8 Claimant.

The Class 8 Claims are impaired and the holders of the Class 8 Claims are entitled to vote to accept or reject the Plan although their votes do not count towards confirmation.

**Class 9 Claims**.  The Class 9 Claims will be paid 3% of their Allowed Claims over 60 months. The payments shall be made in equal monthly payments on the first day of the month following the Effective Date and shall continue on the first day of each month thereafter until paid as called for by this Plan.

The Class 9 Claim is Impaired and the holder of the Class 9 Claim is entitled to vote to accept or reject the Plan.

**Class 10 - Equity Interests**.  On the Confirmation Date, all Equity Interests shall be treated as follows:

On the Effective Date, all Existing Membership Interests in the Debtor shall be cancelled if the unsecured creditor class votes against the Plan.  The new membership interests in the Reorganized Debtor shall be issued 100% to Jag Dhillon who is contributing $250,000.00, to the Reorganized Debtor to be used to fund the Plan.  This amount shall be deposited into the Debtor's counsel's trust account at least five (5) days prior to the Confirmation Date and shall be delivered to the Reorganized Debtor and placed in the DIP Account at Closing.  If the Plan is not Confirmed, the $250,000.00 will be returned. Jag Dhillon shall take no draws for the life of the Plan.

The Debtor believes that the Plan will not violate the absolute priority rule and will be consensual as to the unsecured creditors.  In the event that the Class 9  unsecured creditors do not vote for the Plan, and the Bankruptcy Court requires an auction, then: (i) the Existing Membership Interests will be cancelled on the Effective Date, (ii) the new membership interests in the Reorganized Debtor shall be sold at an Auction sale as set forth herein, and (iii) the new equity interests in the Reorganized Debtor shall be issued to the successful bidder for the interest in the Debtor at the Auction, subject to the terms of this Plan.  If the Plan is not confirmed by the Court at the Confirmation Hearing, then the sale of the equity interests shall not proceed and the sale shall be cancelled.   The Reorganized Debtor shall remain the same corporate entity, without change in its structure.

The auction (the "Auction") under the Plan shall be held at the Confirmation Hearing. Any person or entity that desires to be considered for a possible bid must serve on counsel for the Debtor at least seven business days prior to the Confirmation Hearing the following bid and supporting information (collectively, a "Bid") (i) a copy of its proposed bid containing the cash purchase price for the membership interests in Reorganized Debtor, and all terms and conditions of the Bid, (ii) information identifying the proposed purchaser and all persons or entities who will own or control the proposed purchaser, (iii) information identifying the financial ability of the proposed purchaser and all persons or entities who will own or control the proposed purchaser to perform the Plan, and (iv) information identifying the relevant experience and management of the proposed purchaser and all persons or entities who will own or control the proposed purchaser to perform the Plan.   The Debtor and any other party- in- interest may object to any proposed Bid for any reason.

If an Auction proceeds, the new equity membership interests in Reorganized Debtor shall be sold for the highest and best bid, consistent with the terms of the Plan and subject to objections by creditors and parties-in-interest.  Jag Dhillon opening bid at an Auction sale is

$250,000.00 for 100 percent of the new membership interests and his agreement to manage the hotel during the life of the Plan without a management fee. The Debtor can propose to take the highest and best cash offer for the purchase of the new membership interests in the Reorganized Debtor at the time of the Hearing on Confirmation, so long as the cash purchase price exceeds $250,000. Even if a person or entity other than Jag Dhillon is the successful bidder for the new membership interests in Reorganized Debtor under this Plan, the Plan and the rights and treatment of creditors and claims under the Plan are not impaired, changed or affected.  Any winning bidder for the new membership interests in the Reorganized Debtor acquires such new membership interests subject to (and must expressly assume): (i) the Plan, (ii) the Reorganized Debtor's duties and obligations under the Plan, (iii) the allowance and treatment of claims, rights and liens under the Plan and the rights and remedies of creditors under the Plan and the obligations of the Reorganized Debtor and the purchaser at the Closing. The Debtor shall solicit such bids by noticing this Plan out to the creditors in this case.  The equity interest holders are impaired under the Plan.

Notwithstanding the foregoing, the License Agreement with HHFI, which allows Debtor to operate as a Holiday Inn® Hotel, is not being transferred as part of the Auction.  The License Agreement and all rights thereto, including the Debtor's rights to use HHFI's marks and system, is a nonassignable asset that is not being sold or acquired through the Auction.  If the equity interests are sold through the Auction, the License Agreement will be rejected and terminated on the Effective Date.  In order to operate as a Holiday Inn® Hotel, the purchaser will need to apply to enter into a new license agreement with HHFI or one of its affiliates, which may or may not be approved in HHFI's sole and absolute discretion.  Prospective bidders may obtain a license application by contacting Kevin Winkowski, Manager, Capital Investments & Transactions, InterContinental Hotels Group (770) 604-5158,  kevin.winkowski@ihg.com.  Prospective Bidders are encouraged to contact Mr. Winkowski for the application and to submit a complete application package as early as possible.  Neither the Debtor nor HHFI guarantees a response to an application within any certain time period.

The Equity Interest holders are Impaired under the Plan.

## ARTICLE VI
## MEANS FOR IMPLEMENTATION OF PLAN

**6.01    Implementation of Plan; Vesting.**  This Plan will be implemented, pursuant to Section 1123(a)(5) of the Code, by the commencement of payments as called for in the Plan.

Upon the Effective Date, all property of MEECHAM and its Estate shall vest in MEECHAM, subject to the Allowed Secured Claims in this Plan.

The funds necessary for the satisfaction of the creditors' claims shall be generated from MEECHAM'S income and the auction proceeds

.

## ARTICLE VII
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**7.01    Rejection of Executory Contracts and Unexpired Leases**.    MEECHAM shall assume, pursuant to Bankruptcy Code Section 1123(b)(2), by separate Motions and order unexpired leases of non-residential real property and executory contracts prior to the Confirmation Date or as part of Conformation of a Plan in this case, except that the executory contract between Debtor and HHFI shall be assumed, effective as of the Effective Date, only in the event that the new equity interests are (i) issued to Jag Dhillon; (ii) subject to cure of all monetary defaults on the License Agreement including (a) payment of all past due pre-petition franchise fees in the amount of $58,181.23, plus (b) payment of attorney's fees and costs incurred by HHFI in the amount of $9,500 (collectively, the "Cure Payment"), for a total Cure Payment of $67,681.23, to be paid in six equal monthly installments beginning on the Effective Date and on the first day of each month thereafter; (iii) cure of any non-monetary defaults on the License Agreement on or before the Effective Date; (iv) payment of any realignment fee, and the execution of certain documents (the "Realignment Documents") including personal guarantees before the effective date, acceptable to HHFI in its sole and absolute discretion.    All Cure Payments shall be sent to InterContinental Hotels Group, Attn: Nimesh Patel, Three Ravinia Drive, Suite 100, Atlanta, Georgia 30346-2121.

**7.02    Reservation of Rights**.    MEECHAM shall have the right to assume or reject, pursuant to Bankruptcy Code Section 365, prior to the Confirmation Date, any executory contract or unexpired lease of real property (to the extent permitted under the Bankruptcy Code).

**7.03    Bar Date for Claims Based on Rejection**.    If the rejection of an executory contract or an unexpired lease by MEECHAM results in damages to the other party or parties to such contract or lease, a Claim for such damages shall be forever barred and shall not be enforceable against MEECHAM or their properties or agents, successors, or assigns, unless a proof of Claim is filed with the Bankruptcy Court and served upon MEECHAM, by the earlier of (a) the end of the month following the period in which the Effective Date occurs or (b) such other deadline as the Court may set for asserting a Claim for such damages. Any Rejection Claim arising from the rejection of an unexpired lease or executory contract shall be treated as a General Unsecured Claim; *provided, however,* that any Rejection Claim based upon the rejection of an unexpired lease of real property either prior to the Confirmation Date or upon the entry of the Confirmation Order shall be limited in accordance with section 502(b)(6) of the Bankruptcy Code and state law mitigation requirements. Nothing contained herein shall be deemed an admission by MEECHAM that such rejection gives rise to or results in a Claim or shall be deemed a waiver by MEECHAM of any objections to such Claim if asserted.

## ARTICLE VIII
## ENFORCEMENT, SETTLEMENT, OR ADJUSTMENT OF CLAIMS

**8.01    MEECHAM'S Causes of Action**. Except as otherwise released pursuant to the Plan, all Claims recoverable under Section 550 of the Bankruptcy Code, all Claims against third parties on account of an indebtedness, and all other Claims of any kind or character whatsoever owed to or in favor of MEECHAM or the Estate to the extent not specifically

compromised and released pursuant to this Plan or any agreement referred to and incorporated herein, are hereby preserved and retained for enforcement by MEECHAM for the benefit of the Creditors subsequent to the Effective Date. Nothing in this Plan shall act as a bar as it relates to any claims of MEECHAM against third parties, except as expressly released pursuant to the Plan. Nothing in this Plan or the confirmation of the Plan shall estop the Debtor from asserting claims against third parties.

Objections to Claims. Any party authorized by the Bankruptcy Code may object to the allowance of Pre-petition Claims at any time prior to sixty (60) days after the Effective Date and, as to Rejection Claims, at any time prior to sixty (60) days after the filing of any such Rejection Claim. Any proof of Claim filed after the Court sets bar dates shall be of no force and effect and shall be deemed disallowed. All Contested Claims shall be litigated to Final Order; *provided, however,* that MEECHAM may compromise and settle any Contested Claim, subject to the approval of the Bankruptcy Court. Notwithstanding the foregoing, a person who is found to have received a voidable transfer shall have thirty (30) days following the date upon which the order ruling that such transfer is avoidable becomes a Final Order in which to file a Claim in the amount of such avoided transfer.

No distributions under this Plan shall be made to the holder of a Claim that is in dispute, unless and until such Claim becomes an Allowed Claim. If a Claim is disputed in whole or in part because MEECHAM asserts a right of offset against such Claim or recoupment against the holder of such Claim, then, if and to the extent the Claim giving rise to the offset or recoupment is sustained by Final Order, the Claim in dispute shall be reduced or eliminated and, if applicable, the holder of such Claim shall be required to pay the amount of *such offset or* recoupment, less the amount of its Allowed Claim. In addition, any party authorized by the Bankruptcy Code, at anytime, may request that the Court estimate any contingent, disputed or unliquidated Claim pursuant to Section 502(c) of the Bankruptcy Code, regardless of any prior objections.

**ARTICLE IX**
**EFFECT OF CONFIRMATION**

**9.01    Discharge and Release of** MEECHAM. Except as provided in the Plan, pursuant to Bankruptcy Code Section 1141(d), confirmation of this Plan does discharge MEECHAM. For the avoidance of doubt, no provision in the Plan, the Disclosure Statement, or the Confirmation Order or Section 1141 of the Bankruptcy Code shall be construed as modifying or amending any personal guarantee that guarantees the Debtor's obligations under the License Agreement.

**9.02    Legal Binding Effect.** The provisions of this Plan, pursuant to the Bankruptcy Code Section 1141 shall bind MEECHAM and all Creditors, whether or not they accept this Plan. The distributions provided for Claimants shall not be subject to any Claim by another creditor or interest holder by reason of any assertion of a contractual right of subordination.

**9.03**   **Discharge** shall result in the inability to commence or continue any judicial, administrative, or other action or proceeding on account of any Pre-Petition Date Claims against MEECHAM.

Except as provided in the Plan, from and after the Confirmation Date, all holders of Claims against MEECHAM are restrained and enjoined (a) from commencing or continuing in any manner, any action or other proceeding of any kind with respect to any such Claim against MEECHAM, or its property; (b) from enforcing, attaching, collecting, or recovering by any manner or means, any judgment, award, decree, or order against the Assets or MEECHAM on account of such Claims; c) from creating, perfecting, or enforcing any encumbrance of any kind against the Assets, or MEECHAM on account of such Claims; (d) from asserting any setoff, right of subrogation, or recoupment of any kind against any obligation due the MEECHAM on account of such Claims; and (e) from performing any act, in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan on account of such Claims; *provided, however,* that each holder of a Contested Claim may continue to prosecute its proof of Claim in the Bankruptcy Court and all holders of Claims shall be entitled to enforce its rights under the Plan and any agreements executed or delivered pursuant to or in connection with the Plan. Such restraint shall be consistent with the discharge granted to MEECHAM in connection with confirming its Plan as called for by the Code.

**9.04**   For the avoidance of doubt, if the License Agreement with HHFI is assumed pursuant to section 7.01 of the Plan, nothing in this Article IX, the Plan or any order confirming the Plan shall discharge or release the Debtor from any of its obligations under the License Agreement with HHFI, including by way of illustration the indemnity provision in paragraph 9 of the License Agreement.

## ARTICLE X
## MISCELLANEOUS PROVISIONS

**10.01**   **Request for Relief Under Bankruptcy Code Section 1129.** In the event any Impaired Class shall fail to accept this Plan in accordance with Bankruptcy Code Section 1129(a), MEECHAM reserves the right to, and does hereby request the Bankruptcy Court to confirm the Plan in accordance with Bankruptcy Code Section 1129(b).

**10.02**   **Revocation**. MEECHAM reserves the right to revoke and withdraw this Plan at any time prior to the Confirmation Date.

**10.03**   **Effect of Withdrawal or Revocation**. If MEECHAM revokes or withdraws this Plan prior to the Confirmation Date, then this Plan shall be deemed null and void. In such event, nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against MEECHAM or any other person or to prejudice in any manner the rights of MEECHAM or any person in any further proceedings involving MEECHAM.

**10.04**   **Due Authorization by Creditors.** Each and every Claimant who elects to participate in the distributions provided herein warrants that it is authorized to accept in consideration of its Claim against MEECHAM the distributions provided in the Plan and that there are no outstanding

commitments, agreements, or understandings, express or implied, that may or can in any way defeat or modify the rights conveyed or obligations undertaken by it under this Plan.

**10.05    Entire Agreement**. This Plan, as described herein, the Confirmation Order and all other documents and instruments to effectuate this Plan provided for herein, constitute the entire agreement and understanding among the parties hereto relating to the subject matter hereof and supersedes all prior discussions and documents.

**10.06    Section 1146 Exemption**. Pursuant to Section 1146(c) of the Bankruptcy Code, the issuance, transfer or exchange or any security under this Plan or the making or delivery of any instrument or transfer pursuant to, in implementation of or as contemplated by this Plan or the transfer of any property pursuant to this Plan shall not be taxed under any federal, state or local law imposing a stamp, transfer or similar tax or fee.

**10.07    Provisions Governing Distributions**.  All payments and distributions under the Plan shall be made by MEECHAM as indicated. Any payments or distributions to be made by MEECHAM pursuant to the Plan shall be made as soon as reasonably practicable after the Effective Date, except as otherwise provided for in the Plan, or as may be ordered by the Bankruptcy Court. Any payment or distribution by MEECHAM pursuant to the Plan, to the extent delivered by the United States Mail, shall be deemed made when deposited into the United States Mail.

Payments of Cash to be made by MEECHAM pursuant to the Plan shall be made by check drawn on a domestic bank or by wire transfer from a domestic bank.

Distributions and deliveries to holders of Allowed Claims shall be made at the addresses set forth on the proofs of Claim or proofs of interest filed by such holders (or at the last known addresses of such holders if no proof of Claim or proof of interest is filed). All Claims for undeliverable distributions shall be made on or before the second anniversary of the Effective Date. After such date, all unclaimed property shall remain the property of MEECHAM and the Claim of any other holder with respect to such unclaimed property shall be discharged and forever barred.

Checks issued by MEECHAM in respect of Allowed Claims shall be null and void if not cashed within ninety (90) days of the date of delivery thereof. Requests for reissuance of any check shall be made directly to MEECHAM by the holder of the Allowed Claim to whom such check originally was issued. Any claim in respect of such a voided check within ninety (90) days after the date of delivery of such check. After such date, all Claims in respect of void checks shall be discharged and forever barred, and the amount of such checks shall become Unclaimed Property and returned to MEECHAM.

No interest shall be paid on any Claim unless, and only to the extent that, the Plan specifically provides otherwise.

**10.08    Governing Law**. Unless a rule of law or procedure supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) is applicable, or a specific choice of law provision is provided, the internal laws of the State of Texas shall govern the construction and implementation of the Plan and any agreements, documents, and instruments executed in connection with the Plan, without regard to conflicts of law.

**10.09** **Default**. If MEECHAM fails to satisfy any of the obligations under this Plan and such default is not cured within 30 business days of the date of transmission of notice of the default to MEECHAM, then the defaulted party may pursue all of its remedies outside of the Bankruptcy Court, including, but not limited to, foreclosure on its lien(s) on property. For purposes of this provision, notice shall be provided to MEECHAM, c/o Joyce Lindauer, Esq. at (972) 503-4034.

## ARTICLE XI
## MODIFICATION OF THE PLAN

**11.01** MEECHAM may propose amendments or modifications of the Plan at any time prior to Confirmation, upon notice to all parties-in-interest. After Confirmation, MEECHAM may, with approval of the Court, and so long as it does not materially or adversely affect the interest of creditors, to remedy any defect or omission or reconcile any inconsistencies in the Confirmation Order in such manner as may be necessary to carry out the purposes and effect of this Plan.

## ARTICLE XII
## RETENTION OF JURISDICTION

Notwithstanding confirmation of the Plan or the Effective Date having occurred, the Court will retain jurisdiction for the following purposes:

**12.01** **Allowance of Claims**. To hear and determine the allowability of all Claims upon objections to such Claims.

**12.02** **Executory Contracts and Unexpired Leases Proceedings**. To act with respect to proceedings regarding the assumption of any executory contract or unexpired lease of MEECHAM pursuant to Sections 365 and 1123 of the Code and Article VII of the Plan.

**12.03** **Plan Interpretation**. To resolve controversies and disputes regarding the interpretation of the Plan.

**12.04** **Plan Implementation**. To implement and enforce the provisions of the Plan and enter orders in aid of confirmation and implementation of the Plan.

**12.05** **Plan Modification**. To modify the Plan pursuant to § 1127 of the Code and applicable Bankruptcy Rules, except that no modification shall be made to the Plan that would impair, diminish or affect in any way the rights of participants of any Classes of the Plan without the consent of such Class.

**12.06** **Adjudication of Controversies**. To adjudicate such contested matters and adversary proceedings as may be pending or subsequently initiated in the Court against MEECHAM.

**12.07** **Injunctive Relief**. To issue any injunction or other relief as appropriate to implement the intent of the Plan, and to enter such further orders enforcing any injunctions or other relief issued under the Plan or in the Confirmation Order.

**12.08** **Interpleader Action**. To entertain interpleader actions concerning assets to be distributed or other assets of the Estate.

**12.09**   **Correct Minor Defects.** To correct any defect, cure any omission or reconcile any inconsistency or ambiguity in the Plan, the Confirmation Order or any document executed or to be executed in connection therewith, as may be necessary to carry out the purposes and intent of the Plan, provided that the rights of any holder or an Allowed Claim are not materially and adversely affected thereby.

**12.10**   **Authorization of Fees and Expenses**. To review and authorize payment of professional fees incurred prior to the Effective Date.

**12.11**   **Post-Confirmation Orders Regarding Confirmation**. To enter and implement such orders as may be appropriate in the event the Confirmation Order is, for any reason, stayed, reversed, revoked, modified, or vacated.

**12.12**   **Final Decree**. To enter a final decree closing the Case pursuant to Bankruptcy Rule 3022.

Submitted By:
By: /s/ Joyce Lindauer
Joyce Lindauer
Attorney at Law
Texas Bar No. 21555700
8140 Walnut Hill Lane
Suite 301
Dallas, TX 75231
Tel: (972) 503-4033
Fax: (972) 503-4034
COUNSEL FOR MEECHAM INN& SUITES, LLC


/s/ Jag Dhillon
for MEECHAM INN & SUITES, LLC